No. 57,865

STATE OF KANSAS, *Appellant*, v. CHRISTAL L. WINTER, *Appellee*.

(712 P.2d 1228)

Opinion filed January 17, 1986.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellant.

*Jerry L. Berg*, of Law Offices of Jerry L. Berg, P.A., of Wichita, was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: Christal L. Winter was charged in the District Court of Sedgwick County with theft of more than $150 belonging to Cricket Alley, Inc., contrary to K.S.A. 1984 Supp. 21-3701(a), a class E felony. The trial court sustained defendant's motion to dismiss and the State appeals. The material facts are as follows.

On Friday, September 7, 1984, shortly after 9:00 p.m., the assistant manager of Cricket Alley, a clothing store, placed a bank bag containing the store's receipts in a bank night deposit drop. Unbeknown to her, the drop was inoperative and the bag

did not fall on into the building. The next morning the manager of the store went to the bank to pick up the bag and the deposit ticket, and found that the bank had not received the deposit. On Saturday, September 8, and Sunday, September 9, although the store was open, the deposit bag was not returned or its whereabouts discovered. On Monday, September 10, the manager located the driver of the car which was behind the assistant manager on Friday when she made the deposit drop. Defendant was the owner of that vehicle. Defendant initially denied any knowledge of it, but after a few minutes admitted that she had the Cricket Alley bank bag and that it was at home. She promised to return it later that day. About 6:15 p.m. on September 10, defendant, with her attorney, Mr. Berg, returned the bag to Cricket Alley. The manager counted the cash and checks and all the money was there. After defendant and her attorney left, the manager turned the bag and its contents over to the police. The police inventoried the bag, listing the denominations and serial numbers of the bills, each of the checks, and the deposit slip found therein. On September 12, the police returned the bag and its contents to a representative of Cricket Alley. The money and checks were deposited and returned to the stream of commerce. On September 13, this case was filed and the defendant was charged with theft of the money.

At a preliminary hearing held on October 2, the manager and assistant manager of Cricket Alley testified that the cash and checks were placed in the bag in a certain order when the deposit was prepared, but that when the bag was returned on September 10, the sequential order of the cash had been altered. On October 10, defendant filed a motion for production of the bank depository bag and its contents, so that defendant might have the contents examined for fingerprints. Apparently the State and the defendant were not aware that the bag and its contents had been returned to Cricket Alley. The trial court sustained the motion on October 19.

On December 12, defendant filed a motion to compel production and on December 21, the trial judge found that he had previously ordered production of the items; that they could be exculpatory in nature; that the items were returned to Cricket Alley after the inventory; and that the items could no longer be

produced in a condition relevant to the requested examination. Nevertheless, the court sustained defendant's motion to compel.

On January 11, 1985, defendant filed a motion to dismiss for failure to produce in accordance with the discovery orders, and on January 18, hearing was held before a different judge. No evidence was introduced but, after oral argument, the trial court found that the return of the bag and contents to Cricket Alley was not done in bad faith but that the items could prove to be exculpatory in nature. The court concluded that the only appropriate sanction was dismissal of the action, and defendant's motion to dismiss was sustained. The issues on appeal are whether the defendant was prejudiced by not having access to the bag and whether the trial court erred in dismissing the case.

We first deal with the action of the police department in returning the cash and the checks to the owner. The trial court found that the return was not made in bad faith and we agree. Certainly from the evidence there was no indication of bad faith. At the time of the return, the State had no knowledge that the bills or checks themselves were at all material to the defense.

Two statutes should be mentioned. K.S.A. 22-2512 provides for the disposition of property seized. It provides in pertinent part:

"Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial. The property seized may not be taken from the officer having it in custody so long as it is or may be required as evidence in any trial. *The officer seizing the property shall give a receipt to the person detained or arrested* particularly describing each article of property being held and shall file a copy of such receipt with the magistrate before whom the person detained or arrested is taken." (Emphasis supplied.)

This statute is obviously intended to deal with property which is seized under a search warrant or property which is taken from the accused. It requires the giving of a receipt to the person detained or arrested and provides for the return of that property to the owner, when it is no longer required as evidence, upon notice and order of the trial court. That statute was interpreted by the Court of Appeals in *State v. Antwine & McHenry*, 6 Kan. App. 2d 900, 636 P.2d 208 (1981), *rev. denied* 230 Kan. 819 (1982). The statute is inapplicable here since the property in this case was not seized under a search warrant and was not otherwise "validly seized," in the sense of the statute, but was taken

temporarily from the custody of its owner in order that the police might inventory it.

A more recent enactment is K.S.A. 60-472, which provides in effect that in any prosecution for the wrongful taking of property, photographs of the property are competent evidence of the property and may be admissible in evidence to the same extent as if the property had been offered in evidence. That statute provides for the return of the property to the owner upon the filing of the photograph and a report, under oath, with the law enforcement authority. That statute also is inapplicable here since we are not advised that photographs were taken. Both statutes, however, show the concern of the legislature for the prompt return of stolen property to the rightful owners. As the court said in *Antwine & McHenry*:

"It is tragedy enough that a person has been deprived of his property through some criminal act of another without such loss being compounded by any unnecessary delay in returning the property to its rightful owner. It is the duty of the prosecution and the court to see that a person criminally deprived of property has it restored to him, if possible, at the earliest opportunity consistent with the protection of the rights of both the State and the defendant." 6 Kan. App. 2d at 903.

The prompt return of the property here comports with the legislative and judicial concern, and certainly indicates good faith on the part of the police.

We next turn to the defendant's argument that a forensic examination of the contents of the bag would not reveal any fingerprints of the defendant, thus negating any inference that the defendant handled the money and considered retaining it permanently. We do not agree. There is no evidence before the court that fingerprints could have been recovered from the currency and other documents within the bag at a time more than thirty days after its return, when production was first requested. But assuming that to be true, a forensic examination might or might not have disclosed fingerprints. If the defendant's fingerprints were on any of the contents, that evidence would not have been helpful to the defendant. If defendant's fingerprints were not found, that could be because the defendant did not handle the contents, or because of the time lapse, or because the prints were smudged, etc. There is, of course, no evidence as to what the examination might or might not have disclosed. It would certainly be reasonable for one in defendant's position to have opened the bag in order to determine the ownership thereof.

Upon consideration of all of the arguments advanced, however, we are not convinced that the defendant was materially prejudiced by her inability to have the contents of the bag examined forensically.

We now turn to the final question of whether the trial court erred in dismissing the case. This sanction was taken for violation of a discovery ruling of the trial court. At the time the motion to compel production was sustained, the trial court was aware that the items could not be produced in a condition relevant to a forensic examination. The items were not in the State's possession; they were not in the possession of the owner; and they were not in the possession of the bank. They had entered into the stream of commerce and were beyond the reach of anyone.

It will be helpful to review some of the guidelines relating to the imposition of sanctions for failure to abide by discovery orders. Adequate sanctions are, of course, necessary for the enforcement of discovery procedures. *Binyon v. Nesseth*, 231 Kan. 381, 384-85, 646 P.2d 1043 (1982). The trial court is granted wide discretion in determining what sanctions should be imposed. The presence or lack of good faith, and whether or not the action of the party was willful or intentional, are considered in many decisions. See *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, 676-78, 522 P.2d 449 (1974). Dismissal of an action is a drastic remedy which should be used only in extreme circumstances. Ordinarily, the court should impose the least drastic sanctions which are designed to accomplish the objects of discovery but not to punish. See *Locke v. Kansas Fire & Cas. Co.*, 8 Kan. App. 2d 678, 665 P.2d 776 (1983). The rules stated, while emanating from civil cases, are generally applicable in criminal cases. We recognize that, additionally, sanctions may be imposed where there is a recurring problem or there are repeated instances of intentional failure to disclose or to abide by the court's discovery rulings. None of that, however, is apparent here. The State did not obliterate any obvious exculpatory evidence; it did not attempt to hide evidence favorable to the defendant; and there is no indication that the trial court was faced with a repeated situation which needed corrective action.

In *State v. Jones*, 209 Kan. 526, 498 P.2d 65 (1972), defendant, convicted of murder in the first degree, sought reversal because the trial court overruled his objection to the use of certain

exhibits which the State had failed to show him under the clear and explicit terms of a discovery order. The trial court did not require the State to explain its failure to disclose. We said:

"The discovery order made by the court was comparable to pretrial discovery and inspection now authorized by K.S.A. 1971 Supp. 22-3212, which became effective July 1, 1970. This statute is based upon Rule 16 of the Federal Rules of Criminal Procedure and, like its parent, contains the following provision respecting failure to comply with any order made:

" '(7). . . If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.'

"The clear import of this proviso, which is identical to one contained in Federal Rule 16 (g), is to vest the trial court with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order and federal tribunals have so held (see cases cited 1 Wright, Federal Practice and Procedure, §§ 260-261).

"In *Hansen v. United States*, 393 F. 2d 763 (CA8, 1968), it was held that Rule 16 (g) relating to failure to comply with a discovery order does not require the application of sanctions but allows the trial court discretion in admitting proper evidence not disclosed to defendant as contemplated by a pretrial order.

"Respecting the application of sanctions under Federal Rule 16 (g), the following is stated in 1 Wright, *ibid.*, § 260:

" 'In exercising the broad discretion as to sanctions given by this provision, the court should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.' (p. 533.)

"See, also, Federal Advisory Committee's Note on Rule 16, 39 F.R.D. 175, 178."

Later in the opinion we quoted the American Bar Association Project on Standards for Criminal Justice, Standards Relating To Discovery and Procedure Before Trial § 4.7 (Approved Draft, 1970), where the following is stated:

" '. . . The Committee's general view . . . was that the court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible, since these standards are designed to implement, not to impede, fair and speedy determinations of cases.' " 209 Kan. at 530.

In *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981), defendants were convicted of various counts on a multiple-count indictment alleging conspiracy, fraudulent government contracting activities, bribery and tax evasion. One of the defendants argued that his indictment should have been dismissed because

the government had destroyed certain records that might have been exculpatory. The trial court denied the motion and on appeal the Ninth Circuit Court of Appeals said:

"The prosecution's case against Oelberg included allegations that no 'deliverable' was ever produced under certain of the fraudulent contracts. Oelberg claims that when he retired from NELC in 1975, he left records and OMC deliverables in a secure area of NELC, and that these records and deliverables were intentionally destroyed by government agents at a time when Oelberg was a known target of the investigation.

"The record contradicts Oelberg's contentions, showing that (1) any destruction of Oelberg's records was part of the normal housekeeping functions of NELC (a policy of destroying obsolete classified materials), (2) such destruction was unrelated to and prior to the *commencement* of the criminal investigation (long before Oelberg became a target), and (3) since no record was made of what was destroyed, no one could be sure that any exculpatory materials were included among the destroyed records. There is ample support for the District Court's denial of Oelberg's motion." 645 F.2d at 1347.

Similarly, here, the property was returned in the usual course of business by the police department. There was no indication then and there is no evidence now that any examination of that property would be favorable to the defendant. The return was prior to the commencement of the criminal action. Finally, no one can be sure, no matter what fingerprints might or might not have been found, that any such finding would be exculpatory.

The return of the property and its absence for the purposes of a forensic examination did not violate any constitutional rights of the defendant. Even assuming, as the trial court did here, that the unavailability of the material was prejudicial to the defendant, much less severe sanctions could have been imposed. As the State suggests, the trial court could have forbidden the State from introducing any evidence to show the change in the order of the currency within the bag.

However, upon consideration of all of the arguments, we conclude that no sanctions at all were warranted here, and thus, the trial court erred in dismissing the case.

The judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.