No. 83,679

STATE OF KANSAS, *Appellee*, v. DAVID E. BOLEN, JR., *Appellant*.

(13 P.3d 1270)

Opinion filed December 8, 2000.

*Julie A. McKenna*, county attorney, argued the cause, and *Thomas R. Stanton*, assistant county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellant.

*Patrick H. Dunn*, assistant appellate defender, argued the cause, and *Wm. Rex Lorson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The State of Kansas appeals the trial court's order dismissing all criminal charges against the defendant, David Bolen, with prejudice. The State contends that dismissal with prejudice is an extreme sanction which should only be employed in an extraordinary case against a prosecutor, and that the facts of this case did not require such a sanction. For reasons set forth in this opinion, we agree and reverse and remand for further proceedings.

FACTS:

David Bolen was arrested on December 13, 1998, after drugs were found in a car that he was driving. He was charged with one felony count of possession of cocaine, one felony count of posses-

sion of marijuana, one felony count of possession of drug para-
phernalia, and one misdemeanor count of possession of a depres-
sant, one felony count of driving while suspended, and one felony
count of possession of cocaine without tax stamps. The matter was
set for jury trial on March 2, 1999.

Approximately a week prior to the scheduled trial date, defense
counsel advised the trial court and Assistant Saline County Attor-
ney Thomas R. Stanton, assigned counsel for the State, that a mo-
tion to suppress would be filed. Counsel advised that the motion
to suppress would in all likelihood be dispositive of the issues in
the defendant's case. On March 1, 1999, the day before trial, the
trial court continued the jury trial based on defense counsel's prior
statement that a motion to suppress would be filed, and set the
hearing on the motion to suppress for the next day. Later that day
at approximately 3 p.m, the defendant filed his motion to suppress,
alleging that the stop of the defendant's car was done without prob-
able cause and that there existed no grounds to raise a reasonable
suspicion of criminal activity. The defendant claimed that the
search and seizure violated his rights under the Fourth and Four-
teenth Amendments to the Constitution of the United States.

At the hearing on the motion the next day, Assistant Saline
County Attorney Tony White appeared in place of Stanton. White
advised the trial court that the motion to suppress had been re-
ceived at 3 p.m. the previous day and that Stanton had asked White
to appear and seek a continuance on the case because the State
had not had time to fully prepare.

The trial court stated that it did not understand the problem as
Stanton was aware that a motion to suppress would be filed that
would be dispositive of the case, and that the witnesses and evi-
dence would be essentially the same as that which would be pre-
sented at the trial. The trial court also stated that Stanton had not
advised the court that there was a conflict or anything that would
prevent the motion from being heard.

White then advised the trial court that late on the previous af-
ternoon, another attorney in the prosecutor's office who was han-
dling a jury trial became sick, forcing Stanton to handle that case
on this day. White also informed the court that he was not prepared

to litigate the motion to suppress and that Stanton had already released the witnesses who would have testified at the motion to suppress in anticipation of a continuance being granted.

The trial judge stated that the matter was set and that no one had indicated that there would be a problem in proceeding. He also characterized Stanton's releasing of the witnesses as an "attempt to preempt the Court," which indicated to him that the State was not ready to proceed. The trial court noted that the motion to suppress was not complicated. The trial court then took the matter under advisement to allow White to go to another division and handle a plea in an unrelated case.

When White returned, the trial court made the following ruling:

"The Court has considered the situation here and I'm going to summarize it as I understand it. Counsel can correct me if I'm wrong. [Defense counsel] had previously advised the Court, and Mr. Stanton, who had been appearing as the State's assigned prosecutor in this case, that in lieu of the scheduled jury trial he would be filing a motion to suppress which would in all likelihood be dispositive of the issues in the case one way or another, that that motion was indeed filed late yesterday afternoon. It shows it was filed at three o'clock yesterday afternoon but that was not any type of a surprise to the State in this case. The Court would further find that while the motion does cover some three pages as represented, the actual factual issues are set forth rather succinctly, in about three paragraphs, or three or four paragraphs on the first page, the rest being boilerplate conclusions and boilerplate citations of authority which are well known to both experienced defense counsel and experienced prosecutors. There is no great amount of analysis or study required when the Court would consider that this case was at least theoretically ready for a jury trial at this time. All of the evidence that should have been known to the State, the witnesses were the same, it was just a little different type of presentation. The Court understands that apparently Ms. Trocheck, who was assigned to a jury trial in courtroom 304 is ill. Mr. Stanton opted to take over her case in courtroom 304 rather than to pursue this case. That being all well and good, this Court was not informed of that decision and there was no suggestion as to any need for or request for a continuance in this case. Mr. Stanton was in this courtroom as late as ten after five yesterday. We concluded a proceeding and he never mentioned anything about having a conflict or being unable to proceed on the motion to suppress this morning. The Court would note that Mr. Stanton was able to take over a jury trial on relatively short notice, that it was his responsibility to ascertain and—the availability of another attorney in his office, and Mr. White is indeed present and available and I'm finding it a little difficult to understand why the other appearing attorney couldn't proceed with a simple straightforward routine motion to suppress as scheduled.

"Further there is a reference that Mr. Stanton apparently called off the State's witnesses in anticipation of a continuance in this case. That was done without consulting the Court or requesting the Court or any suggestion to the Court with regard to any problem and it seems rather, to say the least, rather presumptuous to so do without some sort of consultation. I'm led to believe that apparently [defense counsel] was unaware that the matter was going to be requested for a continuance until he and his client appeared here this morning. I don't know what Mr. Bolen's employment status is but I presume that if he is employed he took leave from that employment to be here today. I presume that [defense counsel], like most attorneys these days, gets paid for his appearances in court. A simple courtesy to counsel and the defendant would have been to give them some prior notice. I understand also that at least one of the potential witnesses in this proceeding was not notified that appearance would not be necessary and is present. In all due respect this situation is just, I guess, a symbol of the fact that the wheels seem to be coming off the wagon here with regard to these last minute requests for continuances, the inability to proceed on matters and this reflects both on—not on [defense counsel] in this case, we're getting this from both sides of the fence, both from prosecutors and defense counsel. But in this case there is simply no—a simple matter of—of common courtesy would have—could have resolved and headed off this situation. This Court had no notice whatsoever. I was prepared to proceed, the defendant is here and prepared to proceed. The State is here not prepared to proceed on a matter in which the State has the burden of proof. The State brought criminal charges against this defendant and it is the State's responsibility to promptly and properly pursue those charges.

"The Court finds that the State has not promptly and properly pursued the prosecution in this case and the case is ordered dismissed without—or with prejudice and all matters set forth in the Complaint & Information herein for failure—as a sanction for failure to properly pursue the case and to properly notify counsel and the Court. The State's going to bring charges against them, then it's the State's responsibility to pursue the charges promptly and properly. The case is ordered, as I said, dismissed with prejudice."

On March 11, 1999, the State filed a motion for reconsideration of the dismissal, which was set for hearing on March 15, 1999. Stanton appeared on behalf of the State and recounted to the trial court that he had in fact personally informed the court after receiving the defendant's motion to suppress that there would be a problem with the schedule, although he admitted that the trial court's attention was "clearly divided" at the time. Stanton continued:

"There were three of us in the County Attorney's Office that day and there were again three of us the next morning, myself, Mr. Melton and Tony White. Obviously

I have plenty of experience in this jurisdiction. The other two attorneys however do not. Mr. Melton, on Tuesday, covers an extremely heavy juvenile docket and that left Mr. White to come in here on the second. Ms. Trocheck was sick. Ms. McKenna was in Topeka interviewing trying to get us some more help so we had three people to cover five courtrooms on that date. . . . I did mention to the Court at three-thirty on the day before that I would be handling a jury trial for Ms. Trocheck. . . .

"Mr. White had been with the office about two months, Judge; you've seen his performance. He will be a very competent prosecutor I believe but he is not in a —he was not in a position at that time to come in there and handle a motion to suppress."

Stanton also stated that he had in fact been alerted by defense counsel that a motion to suppress would be filed but stated that he did not know what the allegations would be until he saw a copy of the motion filed. Stanton testified that he did not have time to even review the motion filed at 3 p.m. the day before trial because he was required to take, at the last minute, a previously set jury trial. Thus, he did not have a chance to inform White what arguments would need to be made and train him in that amount of time to handle the motion on a felony drug case. Apparently, White had recently graduated from law school and this was his first position as an assistant county attorney with Saline County. Stanton argued for reconsideration on the basis that he had indicated to the trial court that he would be unavailable but agreed that there was a lack in communication with the trial court. He assured the trial court that he would not have arbitrarily called off the witnesses, but instead did so thinking that the trial court was aware of his difficulty. The trial court stated that it understood that County Attorney McKenna was arguing cases before the Kansas Supreme Court on the day for hearing of the motion to suppress, which was in fact the case.

The trial court found that the State did not act maliciously and that the problem was one of communication. However, the trial court stated:

"Mr. Stanton, if you pick up a jury trial at three o'clock in the afternoon it seems a little bit disingenuous to say that you couldn't pick up a routine boilerplate motion to suppress at three o'clock in the afternoon and further I don't think there's a requirement that a motion to suppress, it's not like a procedural motion,

I mean, a motion to suppress can be raised at or during the trial as far as that goes. But the witnesses were already subpoenaed for the trial. They were the same people that were going to be necessary and essentially the same evidence as the trial. . . .

". . . If I thought there was anything malicious or intentional in this situation the case would not have been dismissed with prejudice. There would have been a citation of contempt. I'm not imputing any bad faith on your part. What I'm imputing however is a serious failure to communicate which, you know, resulted in some inconvenience on both sides of this case and which essentially again disrupts the orderly administration of the Court's docket."

The trial court expressed concern that Stanton had apparently decided to take over the other case rather than appear for the case at hand, and had presumed to dismiss the witnesses. The court also noted that there were interests of justice at issue, in that the defendant was apparently employed and took off work to attend the hearing, and that one of the witnesses had also taken the time to attend. As a result, the court refused to overturn the dismissal.

The State filed an appeal from the dismissal pursuant to K.S.A. 22-3602(b). The case was originally docketed in the Court of Appeals and set for hearing. However, after this court decided *State v. Ismaili*, 269 Kan. 389, 7 P.3d 236 (2000), clarifying that this court has jurisdiction as a matter of right from an order dismissing a complaint, information, or indictment where the dismissal occurred before July 1, 1999, it became clear that jurisdiction was proper in this court and the case was transferred.

ANALYSIS:

The State contends that it was an abuse of discretion for the trial court to have dismissed this case with prejudice as a sanction for the State being unable to proceed on the motion to suppress. The State argues that such an action was unduly harsh and punished the public, and that a lesser sanction should have been invoked.

It is clear from the record that the trial court dismissed all charges with prejudice as a sanction against the State for "not promptly and properly pursu[ing] the prosecution" of the defendant. The only question in this appeal is whether dismissal of the case with prejudice is an appropriate sanction for the State's action. We have recognized that in a proper case, a trial court has the

power to dismiss a criminal complaint with prejudice if the interests of justice require such action. *State v. Crouch & Reeder*, 230 Kan. 783, 788, 641 P.2d 394 (1982). However, such power should be exercised with great caution and only in cases where no other remedy would protect against abuse. 230 Kan. at 788. Dismissal with prejudice should be used only in extreme circumstances. *State v. Winter*, 238 Kan. 530, 534, 712 P.2d 1228 (1986). Dismissal of charges oftentimes punishes the public rather than the prosecutor and creates a windfall for the defendant. *State v. Davis*, 266 Kan. 638, 646, 972 P.2d 1099 (1999). Where there has been no showing that the defendant suffered actual prejudice as a result of a prosecutor's misconduct, and alternative means of sanctioning the prosecutor exist for the violation, dismissal of pending charges with prejudice may constitute an abuse of discretion by the trial court. 266 Kan. at 646.

In *State v. Clovis*, 248 Kan. 313, 331, 807 P.2d 127 (1991), we found that the dismissal of two counts in an indictment with prejudice was not an abuse of discretion where the State had continuously refused to comply with a discovery order to disclose the identity of a confidential informant, and no other sanction would have accomplished the objective. However, the State's conduct in the case at hand does not rise to the level of the conduct in *Clovis*.

In *Davis*, the prosecutor blatantly repeatedly refused on the record to comply with the trial court's discovery order. Nevertheless, we found dismissal with prejudice to be an inappropriate sanction and an abuse of discretion where other sanctions such as a contempt order were available to enforce compliance. 266 Kan. at 646-47. The actions of the State in this case also do not rise to the level of the intentional acts of the prosecutor in *Davis*.

The record clearly indicates that there was a lack of communication regarding the hearing on the defendant's motion for suppression. While the assistant prosecutor handling the case believed he had informed the trial court about his problem in presenting the motion to suppress evidence, the court was not aware of any such communication. Instead, the trial court viewed the matter of releasing witnesses who would have testified on the motion as preempting its control over a case on its docket.

The trial court specifically found that the actions of the State were not malicious, intentional, or taken in bad faith. Circumstances beyond the control of the State prevented it from proceeding with the motion to suppress. The illness of an assistant and the need for Stanton to stand in for a jury trial on the same day the motion had been set for hearing warrants consideration. The record in addition establishes that the county attorney was arguing a case before this court on that same date which prevented her from proceeding with the case. Another assistant was busy with a heavy juvenile docket in another division on that same date. Finally, the record indicates that White, the assistant appearing in Stanton's place, recently graduated from law school, had been on the job for approximately 2 months, and was not in a position to represent the State in the motion to suppress. Moreover, the record establishes that while Stanton was aware the defendant was going to file a motion to suppress, the State was not aware of the claims of the defendant until the motion was actually filed. The motion was filed at 3 p.m. on March 1, 1999, the day before the hearing. All of these facts were made known to the court either at the time it dismissed the case with prejudice or at the time the State requested reconsideration of the dismissal with prejudice.

The only real prejudice to the defendant found by the trial court in the March 2, 1999, hearing was that the defendant, if employed, would have to have taken leave from that employment to be in court. Additionally the court noted that defense counsel would require payment for his appearance. Ultimately, the court acknowledged that the problem resulted from a serious failure to communicate, which resulted in some inconvenience on both sides of this case and which essentially disrupted the orderly administration of the court's docket.

The prejudice suffered by the defendant in this case by reason of the prosecutor's failure to proceed with hearing the defendant's motion to suppress was slight. Other means of sanctioning the prosecutor, if indeed a sanction was necessary, existed. Where there has been no showing that the defendant suffered actual prejudice as a result of a prosecutor's misconduct, and alternative means of sanctioning the prosecutor existed for the violation, dismissal of

pending charges may constitute an abuse of discretion by the trial court. 266 Kan. at 646. Considering the entire record, including the reasons advanced by the State for its motion to continue the hearing on the defendant's motion to suppress, and further considering the actual prejudice suffered by the defendant based upon the State's failure to be prepared to proceed, we have no hesitancy in concluding that a dismissal of all charges with prejudice was an abuse of discretion. We, therefore, reverse and remand for further proceedings.

Reversed and remanded.