NOT DESIGNATED FOR PUBLICATION

No. 115,086

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHARLES D. DAVIS, JR.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 14, 2016. Affirmed in part and reversed in part.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*:  The State appeals the district court's decision granting a motion to dismiss felony charges filed against Charles D. Davis, Jr. The district court granted the motion to dismiss with prejudice after finding that Davis had not been afforded a fair and impartial preliminary hearing. For the reasons stated herein, we affirm the district court's decision to grant Davis' motion to dismiss, but we find that the district court abused its discretion by dismissing the felony charges with prejudice.

1

FACTUAL AND PROCEDURAL BACKGROUND

The evidence, viewed in the light most favorable to the State, establishes the following facts. On the evening of June 9, 2014, Davis' father contacted the Hutchinson Police Department and asked them to send officers to his home to arrest Davis, who was living with his father at the time. Davis' father told the police his son broke the television again and put a hole in the wall by throwing the base of a telephone at it.

Several uniformed Hutchinson Police Department officers responded to the residence. Davis' father told the officers that his son was in a downstairs bedroom, that he had been acting bizarre throughout the day, and that he suspected his son had been drinking earlier. Davis' father also told the officers he did not know how his son would react and he thought that his son might try to fight with them. When the officers asked if Davis had access to any weapons in his bedroom, his father said he had access to knives, but he did not know if Davis had any firearms.

Sergeant Josh Radloff and Officer Travis Lahann went downstairs and found Davis in his bedroom with the door slightly ajar. A routine warrants check confirmed that Davis had an active warrant for his arrest. The officers identified themselves and asked Davis to come out of his bedroom. Davis yelled back that he had a gun and a bomb in his room and that he did not intend to come out peacefully. The officers were apprehensive for their safety. Concerned that Davis might escape out a window or that the situation could escalate into a prolonged standoff, the officers decided to make an entry into the room. Radloff drew his service weapon, and Lahann drew his taser.

The officers found Davis sitting shirtless on his bed with his hands concealed under a blanket. Davis disregarded commands to show his hands, and he concealed them further under the blanket. Fearing that Davis had a weapon concealed under the blanket,

2

Lahann fired his taser at him. Davis successfully blocked the taser barbs with the blanket, and he continued disregarding the officers' commands to comply.

Still fearing that Davis had a knife, gun, or potential bomb concealed under the blanket, Radloff holstered his firearm and drew his taser. Davis again blocked a taser deployment with the blanket in his hands. While Davis' attention was focused on Radloff, Lahann lunged onto the bed and grabbed Davis' arm. Radloff quickly joined him in the struggle. During the struggle, Davis was able to roll over on his stomach with his hands concealed under his body. The officers were still concerned about the fact that Davis might have a weapon in his hands. As they struggled with Davis, both officers received shocks from the electrified barbs deployed by their tasers.

A third officer arrived and began assisting in the struggle that lasted several minutes. During the struggle, Davis tried to bite Radloff and he twisted Radloff's finger to the side like he was trying to break it. According to Radloff, the act was very painful, and the finger was sore for several days. As Davis continued to fight with officers, Radloff delivered several closed-hand strikes to Davis' face and back in an effort to gain his compliance. Eventually, the officers were able to handcuff Davis, and they discovered he had no weapons in his possession. Davis sustained minor facial lacerations and was taken to the hospital to be examined by medical personnel before being jailed.

On June 12, 2014, in 2014CR448, the State charged Davis with two counts of aggravated assault of a law enforcement officer with a deadly weapon; one count of felony interference with a law enforcement officer; and one count of misdemeanor criminal damage to property. A preliminary hearing was held on October 16, 2014, presided over by District Judge Joseph L. McCarville III. The State presented testimony from Davis' father, Lahann, and Radloff. After hearing the evidence, Judge McCarville found probable cause to bind Davis over for trial on each of the felony charges. Thereafter, the State amended its complaint to charge Davis with two counts of

3

aggravated assault of a law enforcement officer with a deadly weapon or, in the alternative, two counts of criminal threat; one count of felony interference with a law enforcement officer; one count of misdemeanor criminal damage to property; and one count of misdemeanor battery of a law enforcement officer.

On January 23, 2015, Davis filed a motion to dismiss the felony charges for insufficiency of the evidence. On February 13, 2015, District Judge Timothy J. Chambers held a hearing on the motion to dismiss. In a written opinion filed on March 11, 2015, Judge Chambers dismissed the two counts of aggravated assault of a law enforcement officer with a deadly weapon because no deadly weapon was found. Judge Chambers ruled that Judge McCarville had misapplied Kansas law defining that crime. Judge Chambers also found that Judge McCarville had improperly restricted Davis's cross-examination into the thought processes of the law enforcement officers.

As to the other charges, Judge Chambers found that the "evidence as to the two counts of criminal threat and aggravated battery of a law enforcement officer was weak." Likewise, Judge Chambers found that the evidence as to felony interference with a law enforcement officer "was weak." Conversely, Judge Chambers found that "[s]trong and convincing evidence was presented as to battery of a law enforcement officer and [misdemeanor] interference with a law enforcement officer."

Judge Chambers went on to state: "The question then becomes if this Court finds a bind over was not made by a neutral and detached magistrate who properly applied the law as to both parties, does that affect all the rulings made at the preliminary hearing? The Court finds it does." While Judge Chambers found that some evidence was presented establishing the criminal threat and aggravated battery of a law enforcement officer counts, he dismissed the remaining charges, finding that Davis was "entitled to have a magistrate decide the preliminary hearing who will fairly and properly apply the law as to both parties." The State did not appeal the dismissal of the case.

4

On March 18, 2015, the State filed a new complaint in 2015CR226 charging Davis with one count of felony battery of a law enforcement officer; two counts of felony criminal threat; two counts of misdemeanor assault on a law enforcement officer; one count of misdemeanor interference with a law enforcement officer; and one count of misdemeanor criminal damage to property. The record reflects that Davis was arrested on the new warrant and held in custody on a $5,000 bond.

On June 4, 2015, a preliminary hearing was held in 2015CR226, again presided over by Judge McCarville. The only evidence the State offered at the second preliminary hearing was the transcript of the preliminary hearing in 2014CR448. The officers who testified at the first preliminary hearing were present and available for cross-examination, but Davis' counsel did not cross-examine them. Judge McCarville again bound Davis over on the felony charges, and he was arraigned on July 6, 2015.

On August 5, 2015, Davis filed a motion to dismiss challenging the sufficiency of the evidence. In response, the State argued that Davis' motion was untimely because K.S.A. 2015 Supp. 22-3208(4) requires such motions to be filed within 21 days of the arraignment and Davis' motion was filed 29 days after arraignment. Substantively, the State argued that the sufficiency of the evidence supporting the refiled felony charges had been recognized not only by Judge McCarville at the first preliminary hearing, but also by Judge Chambers in his ruling on the motion to dismiss the first case. The motion to dismiss again was assigned to Judge Chambers who held a hearing on August 31, 2015.

In a ruling from the bench on December 29, 2015, Judge Chambers granted Davis' motion, dismissing the felony charges with prejudice. In his ruling, Judge Chambers was critical of Judge McCarville's handling of the first preliminary hearing in a number of respects. Judge Chambers found that there was no evidence from which he could find probable cause in 2015CR226 because the only evidence the State had offered in the new case was the product of an unfair hearing. In a subsequently filed journal entry, Judge

5

Chambers found that Davis had "not been afforded a fair and impartial preliminary hearing." Judge Chambers also found that there was "not sufficient evidence to support the felony charges." The State subsequently dismissed the misdemeanor charges and timely appealed Judge Chambers' order dismissing the felony charges with prejudice.

ANALYSIS

On appeal, the State argues that Judge Chambers erred by dismissing the felony charges filed in 2015CR226 because both Judge McCarville and Judge Chambers had found there was sufficient evidence at the first preliminary hearing to support the charges filed in the second case. The State does not renew the argument it made in district court that Davis' motion to dismiss was untimely filed pursuant to K.S.A. 2015 Supp. 22-3208(4). An issue not briefed by the appellant is deemed waived or abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

Davis responds that Judge Chambers properly dismissed the felony charges in 2015CR226 when the State's sole evidence at the preliminary hearing came from a hearing in a prior case already found to be unfair. Davis argues that collateral estoppel precludes disturbing Judge Chambers' decision to dismiss in 2014CR448 and, as a result, Judge Chambers lacked valid evidence to find probable cause in 2015CR226.

"[W]hen the State appeals from a district court's dismissal of a criminal prosecution for lack of probable cause, an appellate court reviews the evidence de novo, applying the same standards as the district court." *In re Care & Treatment of Burch*, 296 Kan. 215, 224, 291 P.3d 78 (2012). However, the district court's decision to dismiss a criminal complaint with prejudice, as opposed to without prejudice, is reviewed by an appellate court for an abuse of discretion. See *State v. Bolen*, 270 Kan. 337, 342-43, 13 P.3d 1270 (2000).

6

The State characterizes this appeal as though Judge Chambers dismissed the felony charges in 2015CR226 only because he found insufficient evidence of probable cause. But Judge Chambers made clear that he did not dismiss the felony charges in 2015CR226 based upon an evaluation of the quality of the evidence at the prior hearing; he dismissed the charges because the only evidence presented to the court at the second preliminary hearing was the transcript from the first preliminary hearing—a hearing that Judge Chambers already had found to be fundamentally unfair.

Although Davis frames his legal argument under the doctrine of collateral estoppel, we find more appropriate support for the district court's ruling based on the law of the case doctrine. In *State v. Finical*, 254 Kan. 529, 532-33, 867 P.2d 322 (1994), the Kansas Supreme Court applied the law of the case doctrine to hold that the State could not appeal the dismissal of its refiled case, where it had failed to appeal the dismissal of its first case and did not remedy the reasons for the prior dismissal. Davis argues that *Finical* applies here because in both instances, flaws in the preliminary proceedings caused the district court to dismiss the charges.

In *Finical*, the State appealed the dismissal of nine indictments against defendants in eight separate actions. In the first case filed against the defendants, the district court granted the defendant's motion to dismiss, finding that the indictments had been returned by an improperly impaneled grand jury. The State did not appeal but instead requested that the term of the grand jury be extended and sought new indictments from the same grand jury.

The defendants moved to dismiss the new indictments, and the district court granted the motion because the composition of the grand jury had not been altered after the court's initial ruling. The State appealed. The Kansas Supreme Court determined that the first ruling regarding the incompetency of the grand jury to issue a valid indictment became the law of the case. 254 Kan. at 532-33. Our Supreme Court concluded that the

7

State was foreclosed from appealing the dismissal of the second set of indictments and stated:

> "We have held that '[t]he dismissal of a complaint in a criminal prosecution is a final order and precludes further prosecution of the defendant unless the State should overcome the reasons for the prior dismissal at a subsequent preliminary examination on a refiled complaint.' *State v. Zimmerman & Schmidt*, 233 Kan. 151, 155, 660 P.2d 960 (1983). The State did not appeal [the trial court's] decision, and the State took no action to 'overcome the reasons for the prior dismissal.' [The trial court] dismissed the indictments because [it] found the grand jury was not properly convened. The State simply returned to the same grand jury and sought additional indictments against the same and additional defendants.
>
> "When the State chose not to appeal [the district court's] ruling that the grand jury was not properly convened and lacked authority to issue valid and enforceable indictments, [the district court's] ruling became the law of the case. We repeatedly have held that when an appealable order is not appealed it becomes the law of the case. [Citations omitted.]" 254 Kan. at 532.

*Finical* closely parallels the facts herein. The alleged flaw in the preliminary proceedings here—the lack of a neutral and detached magistrate—is a fundamental flaw, just as is an improperly impaneled grand jury. In *Finical*, the State could have requested that a new grand jury be impaneled using proper selection methods. Here, the State could have requested that a new judge be assigned for the preliminary hearing in 2015CR226 and presented new evidence to support the charges. Instead, for its only evidence at the second preliminary hearing, the State offered a transcript of the first preliminary hearing that Judge Chambers already had ruled was fundamentally unfair because of the lack of a neutral and detached magistrate. To be clear, we take no position on whether Judge Chambers' original ruling was legally sound. However, Judge Chambers' ruling—which was not appealed by the State—became the law of the case.

8

The State argues that any unfairness in the first preliminary hearing was cured because it brought back the officers so Davis could cross-examine them at the second preliminary hearing. However, Judge McCarville's ruling that had restricted Davis' cross-examination of the officers at the first preliminary hearing was only a small part of the bias identified by Judge Chambers in granting the first motion to dismiss, so the State's production of these witnesses at the second hearing did not overcome the primary reasons for the prior dismissal. Because the State failed to take action to overcome the reasons for the prior dismissal, the State is now foreclosed from appealing the dismissal of the felony counts in 2015CR226 based on the court's reasoning in *Finical*.

Nevertheless, we conclude that Judge Chambers abused his discretion when he dismissed the felony charges against Davis with prejudice. Under certain circumstances, a district court can dismiss criminal charges with prejudice but only as a remedy of last resort. In *Bolen*, 270 Kan. at 342-43, our Supreme Court stated:

"We have recognized that in a proper case, a trial court has the power to dismiss a criminal complaint with prejudice if the interests of justice require such action. *State v. Crouch & Reeder,* 230 Kan. 783, 788, 641 P.2d 394 (1982). However, such power should be exercised with great caution and only in cases where no other remedy would protect against abuse. 230 Kan. at 788. Dismissal with prejudice should be used only in extreme circumstances. *State v. Winter,* 238 Kan. 530, 534, 712 P.2d 1228 (1986). Dismissal of charges oftentimes punishes the public rather than the prosecutor and creates a windfall for the defendant. *State v. Davis,* 266 Kan. 638, 646, 972 P.2d 1099 (1999). Where there has been no showing that the defendant suffered actual prejudice as a result of a prosecutor's misconduct, and alternative means of sanctioning the prosecutor exist for the violation, dismissal of pending charges with prejudice may constitute an abuse of discretion by the trial court. 266 Kan. at 646."

Here, Judge Chambers did not find that Davis had suffered any prejudice as a result of the State's decision to refile charges and proceed with the same preliminary hearing transcript. Likewise, Davis has not asserted any grounds to establish prejudice in

9

either district court or on appeal. The dismissal of criminal charges with prejudice is a remedy of last resort that should only be used in extreme circumstances. *Bolen*, 270 Kan. at 342-43. Under the circumstances herein, dismissal of the felony charges with prejudice was unnecessary to serve the interests of justice and constituted an abuse of discretion.

In sum, Judge Chambers dismissed the felony charges in the first case against Davis based on a finding that the preliminary hearing had not been conducted by a neutral and detached magistrate judge who properly applied the law as to both parties. Again, we take no position on whether Judge Chambers' original dismissal of the case was legally sound. However, the State did not appeal the ruling and the findings made by Judge Chambers became the law of the case. As a result, when the State refiled charges and presented the transcript of the first preliminary hearing as its only evidence at the second preliminary hearing, Judge Chambers did not err when he granted Davis' motion to dismiss the felony charges in the second case. However, we find that Judge Chambers abused his discretion by dismissing the felony charges with prejudice.

Affirmed in part and reversed in part.