No. 120,438

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JEREMY WAYNE AUMAN,
*Appellee*.

SYLLABUS BY THE COURT

1.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, prosecutors have an affirmative duty to disclose evidence favorable to a defendant when the evidence is material either to guilt or to punishment. This duty exists irrespective of the good faith or bad faith of the prosecution.

2.

The responsibility to provide material evidence is not limited to prosecutors. Rather, because law enforcement officers act with state authority, law enforcement's knowledge of evidence is imputed to the State. The State therefore runs afoul of this principle when a prosecutor withholds material evidence that is not known to the prosecutor but is known to law enforcement.

3.

When a district court learns that the State has failed to disclose evidence favorable to the defendant, the court may impose a range of sanctions, including granting continuances, restricting the use of evidence, and entering any other order the court "deems just under the circumstances." K.S.A. 2018 Supp. 22-3212(i). By allowing

district courts to enter such orders as they deem "just," the Kansas Legislature has afforded courts discretion to determine the appropriate sanction in a given case.

4.

An appellate court will uphold the imposition of a discovery sanction in a criminal case—including dismissal—unless that action constitutes an abuse of discretion.

5.

When determining which sanction to impose for discovery violations in a criminal case, a court should take into account the reasons why disclosure was not made; the extent of the prejudice, if any, to the opposing party; the feasibility of rectifying that prejudice by a continuance; and any other relevant circumstances.

6.

Because dismissal is a drastic remedy, Kansas courts have historically observed that it should be used only in extreme circumstances, when a lesser sanction would not accomplish the desired objective. That said, Kansas courts have long recognized that a court may dismiss a case when failure to abide by the discovery rules prevents a fair trial.

7.

Evidence is materially exculpatory if it would raise a doubt about the defendant's guilt. The United States Constitution requires, at a minimum, that such evidence be provided to the defendant in a criminal case for his or her investigation and possible defense.

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed November 1, 2019. Affirmed.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

WARNER, J.: Kansas courts have long recognized that the law favors resolving criminal charges on their merits. *State v. Davis*, 266 Kan. 638, 646, 972 P.2d 1099 (1999). At the same time, various constitutional and statutory safeguards ensure the process for resolving such charges is a fair one—including the requirement that prosecutors timely disclose evidence that is material to the question of a defendant's guilt. *State v. Warrior*, 294 Kan. 484, 505-06, 277 P.3d 1111 (2012). This case presents a rare situation where these principles are in irreconcilable conflict.

On the Friday before his Monday trial for aggravated battery while driving under the influence, Jeremy Auman received a previously undisclosed dashcam video from the State. The video included the names of several previously unidentified witnesses and a discussion between officers about how the glare from the setting sun—not Auman's alleged impairment—may have caused the collision in question. The Monday trial setting was the last opportunity to try the case within the timeframe guaranteed by Auman's statutory right to a speedy trial. Given the State's delay in providing the information and the video's potential exculpatory value, compounded by the speedy trial issue, the district court dismissed the case. Although we recognize that dismissal of a criminal case is a drastic remedy not to be taken lightly, we affirm.

FACTUAL BACKGROUND

In the early evening of May 4, 2016, Auman was traveling west on 6th Street in Lawrence. Auman moved into the left-turn lane and, with a green light, entered the

3

intersection to turn left onto Maine Street. Tragically, Auman did not see a motorcyclist traveling east on 6th Street in the outside lane. As Auman began to turn, the motorcyclist laid down his bike, slid into the passenger side of Auman's car, and was dragged under the vehicle. Auman felt the impact and stopped in the intersection after the collision. He learned that he had hit someone when witnesses approached his car and asked him to back up so the motorcyclist could be extracted. The motorcyclist suffered serious injuries from the collision, including nine skull fractures, ruptured ear drums, a punctured lung, and third-degree burns across his chest.

When police arrived at the scene, they found Auman leaning against a light post at the intersection, repeating that he "didn't even see" the motorcyclist. Officers spoke with Auman and collected the contact information from several witnesses at the scene. Because one of the officers detected "a moderate smell of alcoholic beverage" on Auman, the officers took Auman to the law enforcement center for questioning and DUI testing.

Auman explained he had gone to a Lawrence bar around 6:30 p.m. and had drunk one pint of Coors during the bar's happy hour. He then left to go home and retrieve some items to bring to the bar's "May the Fourth" Star Wars celebration. It was on his way from the bar to his house, shortly after 7 p.m., that the collision occurred.

The police officer questioning Auman conducted field sobriety tests to determine whether Auman had been driving impaired. During one of those sobriety tests, the officer asked Auman whether he was taking any medications; Auman informed him that he had taken Wellbutrin and Lexapro around 4 p.m. and had taken Klonopin around noon. Auman stated that he had been prescribed these medications about a month before the incident. With Auman's consent, the officer administered a preliminary breath test, which read .022—below the legal limit.

4

While Auman's breathalyzer results indicated a low amount of alcohol in his system, his performance on the other tests indicated impairment. So the police officer asked Auman whether he would be willing to undergo a blood test. Again, Auman agreed. After the blood draw, the police read him his *Miranda* rights for the first time. Auman waived his rights, and Deputy Brad Williams, a drug recognition expert, conducted a more extensive sobriety test. Williams concluded Auman was under the influence of alcohol and a central nervous system depressant (his prescribed medications).

Nineteen months later, the State charged Auman with aggravated battery while driving under the influence. Auman was arrested and released on bond; he remained on bond throughout the remainder of the proceedings.

After the preliminary hearing in Auman's case on April 30, 2018, the court scheduled a jury trial for August 27, 2018. At some point in August, presumably in advance of the upcoming trial (though the record is not clear as to the date), the State submitted a Media Request to the Lawrence Police Department. This request sought, among other things, a "Full Copy of everything" on the department's management software relating to the incident, as well as copies of "In-car videos." The request asked that this information be provided to the district attorney's office "Within a Week."

When the parties arrived for the first day of trial on August 27, the court indicated that, because of other trials scheduled that day, Auman's trial would need to be continued to October 29, 2018—the final day under the Kansas 180-day speedy trial statute. The court asked the parties whether they would need a status conference before the trial. Auman indicated he believed he had all the State's discovery but asked the State to verify whether that was the case. The court set October 18 as the final deadline for all discovery by the State, and the State agreed.

At the status conference on October 18, the State made no indication that it was awaiting further discovery from law enforcement or any other source. But on Wednesday, October 24—five days before the trial and six days after the status conference and discovery deadline—the district attorney's office filed another Media Request. The October 24 request asked for the same information requested in August, including any in-car videos, and specifically asked whether there were any diagrams constructed for this incident. The request indicated that the district attorney's office needed this information "Immediately."

The next day, October 25—four days before the Monday trial—the State filed yet another Media Request, specifically requesting "In car video from Officers Buitrago and Shane Williams" and the "Recording of [the] DRE Examination at the Law Enforcement Center conducted by Deputy Brad Williams." Again, the office asked that the police department provide this information "Immediately."

In response to this October 25 request, the department produced two, in-car dashcam videos. These videos were provided to Auman on October 26, the Friday before his Monday trial. The videos provided the names and phone numbers of at least three witnesses—none of whom had been previously listed or endorsed by the State. The videos also included a conversation between two officers, discussing the collision and reporting witnesses' views—that they were not sure whether Auman had seen the motorcycle. One of the officers then added, "he took a left turn in front of a bike looking right into the sun. Makes sense."

On Sunday, October 28—the day before trial—Auman moved to dismiss the case due to the State's failure to disclose the dashcam video before that Friday. Auman also filed a motion in limine, seeking to exclude Auman's statements to police officers before he was provided his *Miranda* rights. And Auman asserted that the State should not be

6

allowed to play the portions of the newly divulged dashcam video that showed conversations between him and officers at the scene.

After hearing argument from the parties on the morning of trial, the district court granted Auman's motion to dismiss. The court found that the newly divulged dashcam video contained information that was "potentially exculpatory or explanatory, at a minimum, as to what happened at the scene," and that the explanatory nature of the information benefited Auman, not the State. The court noted that the late disclosure of the video allowed "no opportunity for the defense" to contact the witnesses, if they could in fact be found "two years or more from the date of the accident." Finally, the court observed that October 29 was the very last day of Auman's 180-day speedy trial timeframe. Given all these considerations, the court dismissed the case.

The State appeals, arguing that dismissal is the "most severe discovery sanction," and the district court abused its discretion in taking such drastic action. We disagree, given the facts of this case, and affirm the court's decision.

DISCUSSION

One of the core principles underlying our system of justice is a guarantee under the Due Process Clause of the Fourteenth Amendment to the United States Constitution that "criminal trials are fair." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). For this reason, prosecutors have an affirmative duty to disclose evidence favorable to a defendant when "'the evidence is material either to guilt or to punishment.'" *Warrior*, 294 Kan. at 506 (quoting *Brady*, 373 U.S. at 87). This duty exists "'irrespective of the good faith or bad faith of the prosecution.'" *Warrior*, 294 Kan. at 506 (quoting *Brady*, 373 U.S. at 87).

The responsibility to provide material evidence to the defense is not a duty limited to prosecutors. Rather, because law enforcement officers act with state authority, "law enforcement's knowledge of evidence is imputed to the State." *Warrior*, 294 Kan. at 506. The State therefore runs afoul of this principle—that is, commits a *Brady* violation—"when the prosecutor withholds material evidence that is not known to the prosecutor but is known to law enforcement." 294 Kan. at 506. When the State fails to disclose evidence favorable to the defendant, the district court may impose a range of sanctions, including granting continuances, restricting the use of evidence, and entering any other order the court "deems just under the circumstances." K.S.A. 2018 Supp. 22-3212(i).

Our Kansas Supreme Court has observed that the Kansas Legislature—by allowing district courts to enter such orders as they deem "just"—has afforded courts "discretion to determine the appropriate sanction" in a given case. *State v. Johnson*, 286 Kan. 824, 832, 190 P.3d 207 (2008). In fact, the "clear import of this proviso," which contains language identical to Federal Rule of Criminal Procedure 16(d)(2), is "to vest the trial court with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order." *State v. Jones*, 209 Kan. 526, 528, 498 P.2d 65 (1972). For this reason, an appellate court will uphold the imposition of a discovery sanction, including dismissal, unless that action constitutes an abuse of discretion. *State v. Miller*, 308 Kan. 1119, 1175, 427 P.3d 907 (2018). A district court abuses its discretion if no reasonable person would have taken the court's view or if its action is based on an error of law or fact. *State v. Marshall*, 303 Kan. 438, Syl. ¶ 2, 362 P.3d 587 (2015).

When determining which sanction to impose, courts should "take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *Jones*, 209 Kan. 526, Syl. ¶ 2. Kansas appellate courts have generally observed that courts should seek to "impose the least drastic sanctions which are designed to accomplish the objects of discovery but not to punish." *State v. Winter*, 238 Kan. 530,

534, 712 P.2d 1228 (1986). Thus, because dismissal is a "drastic remedy," courts have historically opined that it should be used only in "extreme circumstances," 238 Kan. at 534, when a lesser sanction would not accomplish the desired objective. See *State v. Clovis*, 248 Kan. 313, 331, 807 P.2d 127 (1991). That said, Kansas courts have long recognized that a court "may dismiss a case where failure to abide by the discovery rules prevents a fair trial." 248 Kan. at 330.

Applying these principles here, we conclude the district court did not abuse its discretion in taking the admittedly drastic step of dismissing the State's case against Auman. As a preliminary matter, we—like the district court—find the information included in the dashcam footage to provide information material to Auman's defense. The previously undisclosed video provided, at a minimum, the names and contact information of at least three witnesses of the collision who had never been released by the State. The district court rightly observed that these individuals may have been able to provide "potentially exculpatory" or at least "explanatory" evidence as to what caused the collision.

It is true that Kansas courts, when faced with allegations of *Brady* violations, have distinguished between evidence that is "material" and evidence that "might conceivably acquire significance." *State v. Johnson*, 297 Kan. 210, 217, 301 P.3d 287 (2013). But the conversation between the two officers on the dashcam video underscores the materiality of the information contained in the video. When discussing the ongoing investigation, one officer mentioned that witnesses indicated Auman may not have seen the motorcyclist. Another officer responded that it appeared Auman "took a left turn in front of a bike looking right into the sun" and that this "makes sense." While it is unclear whether this officer was providing his own opinion or the opinion of an eyewitness, the video provided a plausible explanation for why Auman may have turned when he did— an explanation previously undisclosed by the State.

9

The State charged Auman with aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(3)(A). This charge requires a showing the defendant operated a vehicle while incapable of safely driving (due to the influence of drugs or alcohol), resulting in great bodily harm to another. See K.S.A. 2018 Supp. 8-1567(a); K.S.A. 2018 Supp. 21-5413(b)(3)(A); PIK Crim. 4th 54.310 (2018 Supp.). That is, the State must demonstrate the defendant's intoxication caused the harm. Testimony about the sun blinding Auman would tend to show the sun's glare, not the intoxication, caused the collision; this would negate an element of guilt. Accord *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (explaining that evidence is materially exculpatory if it "would raise a reasonable doubt about the defendant's guilt") (citing *United States v. Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 [1976]). The Constitution requires, at a minimum, that evidence containing such material explanations be provided to Auman for his investigation and possible defense.

If the State had disclosed the video dashcam evidence earlier in the case, instead of the Friday before a Monday trial, Auman would have had an opportunity to contact the witnesses and investigate this available defense. But it was not reasonable—particularly given the time that had passed between the May 2016 collision and the October 2018 trial—to expect that the defense could contact these witnesses and investigate their accounts the weekend before the trial.

And while the prejudice caused by delayed disclosures of material discovery in some cases may be rectified through another discovery sanction (such as the exclusion of certain evidence) or continuing the trial, such remedies were not available here. The State's suggested remedy of excluding the dashcam video, which the State intended to offer so the jury could hear Auman's speech and statements to law enforcement, would have been ineffective to correct the crux of the problem—that the State did not disclose potentially exculpatory information in time for Auman to conduct an investigation and present his defense at trial.

Neither was a continuance a feasible option in this case, as the Monday trial was the last available trial date that would comport with Auman's statutory right to a speedy trial. See *Clovis*, 248 Kan. at 331 (affirming a district court's dismissal of criminal charges after a *Brady* violation when a continuance was not available due to a "speedy trial issue"). In short, any other remedy would have placed Auman in the untenable situation of having to choose between enforcing his constitutional right to a fair trial and exercising his statutory right to have his case be tried within 180 days of arraignment. The district court was well-aware of this predicament, explaining it could either dismiss the case when it did, based on the failure to disclose the dashcam video, or dismiss it later under the Kansas speedy trial statute.

In affirming the district court's dismissal, we are sensitive to the difficult position a prosecutor may find himself or herself in when faced with a law enforcement department that does not promptly respond to discovery requests. Here, the prosecutor submitted numerous requests to the Lawrence Police Department for evidence related to Auman's collision—including multiple requests for dashcam video evidence. In dismissing this case, the district court specifically found that "this is not a blaming game that somehow the prosecution didn't do enough in order to make sure that the discovery was complete," but rather surmised that the issue may have arisen as a result of the computer system used by the State. We have no reason to doubt this assessment, though we note that the State's requests all came within a week of a then-scheduled trial.

We emphasize, however, that dismissal here was not inevitable. The State was under no obligation to charge Auman when it did and certainly could have waited to file the case until it received all discovery information from law enforcement. Accord K.S.A. 2018 Supp. 21-5107(d) (providing a five-year statute of limitations for most criminal prosecutions in Kansas). Or the State—through cooperative efforts of prosecutors and law enforcement—could have arranged for all discovery to be provided within the time

11

frame ordered by the district court. The Constitution requires such cooperation and disclosure, lest the State risk sanction. Indeed, the failure to take such actions here, compounded by the expiration of the statutorily guaranteed speedy trial period, resulted in dismissal being the only workable remedy available to the district court.

The due-process protections afforded by the United States Constitution stress that a defendant should not be forced to bear the burden of a lack of cooperation between the prosecutor and law enforcement. This is particularly true here, when it results in the eleventh-hour disclosure of potentially exculpatory information that was within the State's possession since Auman's collision. Under these facts, the district court did not abuse its discretion in dismissing the case.

Affirmed.