In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 13-3195 & 13-3196

GABRIEL V. MENDOZA,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeals from the United States District Court for the
Northern District of Indiana, South Bend Division.
Nos. 3:12-cv-00072 & 3:12-cv-00073 — **Robert L. Miller, Jr.,** *Judge*.

ARGUED APRIL 22, 2014 — DECIDED JUNE 18, 2014

Before POSNER, WILLIAMS, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Gabriel Mendoza was sentenced to multiple terms of life imprisonment after he was convicted of a drug conspiracy and other drug offenses in the United States District Court for the Northern District of Indiana. Mendoza appealed, challenging the sufficiency of the evidence as to the conspiracy conviction and his sentence, and we affirmed. *United States v. Mendoza*, 401 F. App'x 128 (7th Cir. 2010). Mendoza then petitioned for relief from his con-

victions under 28 U.S.C. § 2255, claiming that he was denied due process when the district court moved one of his Spanish-speaking interpreters from the defense table to interpret for a Spanish-speaking witness at trial. He also argued that his trial counsel provided ineffective assistance in failing to object to this interpreter arrangement and failing to translate discovery and adequately review it with him. The district court held an evidentiary hearing at which Mendoza, his trial counsel, and the three interpreters who participated in the trial all testified. Following the hearing, the court denied Mendoza's § 2255 petition, concluding that he was not deprived of due process nor provided ineffective assistance of counsel. We affirm.

## I.   BACKGROUND

Mark Lenyo was appointed as counsel to represent Mendoza in the district court. Lenyo has been a practicing attorney since 1984, has represented thousands of clients (both criminal and civil) over the years, and has extensive federal criminal defense experience. Mendoza speaks only Spanish and required an interpreter throughout the court proceedings (although he may understand some spoken English, as we will briefly explain below). Lenyo does not speak or understand much Spanish. Shortly after Lenyo's appointment, the court received a pro se letter from Mendoza asking for "copies of everything in Spanish." The court declined to take action on the pro se letter because Mendoza was represented by counsel.

The government produced thousands of pages of discovery in Mendoza's criminal case. Mendoza requested that Lenyo have all discovery translated into Spanish. Given the volume of discovery and based on his professional judg-

ment, Lenyo viewed the request as impractical, if not impossible, and did not have any of the discovery translated. However, he spent more than twenty-one hours reviewing the discovery, summarized the discovery, and later had the court-appointed interpreter, Susannah Bueno, orally translate the summary for Mendoza.

Lenyo met with Mendoza five times before trial, for a total of more than six hours, at the county jail where Mendoza was being held. During these meetings, they discussed the case, including such matters as defense strategy, and reviewed discovery. Bueno was present at each meeting to interpret for Mendoza. Lenyo also met with Mendoza and discussed the case before each of the five court appearances before trial and during each of the six days that Mendoza was on trial. And Lenyo arranged for Mendoza to view the physical evidence against him at the U.S. Attorney's office several weeks prior to the start of trial. Bueno was present at the time to interpret the agents' description of the evidence so Mendoza could understand it.

On the first day of trial, Mendoza moved for new counsel. He complained that Lenyo had not had all the discovery documents translated into Spanish. Lenyo told the district court that he had advised Mendoza that given "the large volume of discovery," he had decided that not all of it would be translated from English into Spanish. Lenyo further explained to the court that given the "sheer volume" of the paperwork involved, it would have been impractical if not impossible to translate each document and review it with Mendoza. After also hearing from the prosecutor, the district court decided that Mendoza's request for new counsel was untimely, that Lenyo had diligently prepared for trial and

that there was no breakdown in communication between Lenyo and Mendoza. Based on these determinations, the court denied Mendoza's motion for new counsel.

Two of three interpreters worked each day of trial, rotating on the various days of trial: Bueno, Ana Maria Toro-Greiner, and Julia Kurtz. The second day of trial, Bueno and Toro-Greiner were the interpreters. When Aurora Virruta, Mendoza's common law wife was called to testify, the prosecutor advised the court that Virruta did not speak English and requested a bench conference. The court said, "We don't have interpreters for witnesses," and "we'll have to move our interpreter over for that purpose." Lenyo did not object. Toro-Greiner was moved to be near the witness stand to interpret for Virruta on direct examination; Bueno also interpreted for Virruta on cross and redirect. The trial transcript does not indicate where Bueno was located during Virruta's direct examination; nor does it indicate where Toro-Greiner was located during the cross and redirect. At the end of Virruta's testimony, the court took a lunch recess before testimony resumed in the afternoon.

At the conclusion of the six-day trial, the jury found Mendoza guilty of a criminal drug conspiracy and related offenses. The district court sentenced him to life imprisonment plus twenty years. Mendoza appealed, and we affirmed. *See Mendoza*, 401 F. App'x at 128–31.

Thereafter Mendoza filed a federal habeas petition under § 2255, raising both a due process argument relating to the interpreter arrangement during Virruta's testimony and an ineffective-assistance-of-counsel claim. The district court appointed new counsel for Mendoza and conducted an evidentiary hearing on the petition over the course of three days. At

the hearing, Mendoza claimed that he had no interpreter at the defense table to assist him during Virruta's testimony. He also claimed that he could not hear the Spanish translations of the questions asked Virruta or her answers, and that the interpreters and Lenyo ignored his complaints about being unable to hear the questions and Virruta's answers.

In contrast, Lenyo testified that when the bench conference took place just after Virruta was called to testify, two interpreters were present in the courtroom and that two interpreters were in the courtroom throughout the trial. He testified that at all times during Virruta's testimony, an interpreter was sitting by Mendoza and never left his side. When asked whether Mendoza had any issues regarding Virruta or whether Mendoza wanted him to ask any questions of Virruta, Lenyo said that Mendoza did not make him aware of anything. Lenyo added that at no point in the trial, whether during Virruta's testimony or that of any other witness, did he have any problem or difficulty communicating with Mendoza through the interpreters.

When Virruta testified on direct at trial, Lenyo was seated at the defense table with Mendoza. At the evidentiary hearing, Lenyo testified that he had no trouble hearing the questions asked or answers given during Virruta's testimony, in Spanish or in English translation. He stated that at no point during the testimony of any witness did Mendoza indicate that he was having difficulty understanding or hearing the witness or the questions. And Mendoza did not express any displeasure to Lenyo regarding Virruta's testimony. Lenyo obtained from Virruta the information that he believed as a matter of strategy he needed from her—that she

had not seen Mendoza deal drugs or have drugs in the home or his garage.

Lenyo's testimony was supported by the testimony of the interpreters Bueno and Toro-Greiner. Although Bueno could not recall where she was during Virruta's direct examination, she said that she was sitting next to Mendoza or somewhere else in the courtroom, which was consistent with her usual practice of being in the courtroom when she was not actively interpreting. Bueno did not know where Toro-Greiner was during Virruta's cross and redirect examination; Bueno explained that her focus was on the witness. Similarly, Toro-Greiner did not recall where Bueno was during Virruta's direct examination since her focus, too, was on the witness. But Toro-Greiner did say that it would be unusual to have only one interpreter in the courtroom during a witness's testimony. Bueno testified that she spoke in a voice loud enough so that Mendoza could hear her while she was interpreting for Virruta. Toro-Greiner spoke in a loud voice so she could be heard as well. Bueno said that she did not recall Mendoza mentioning any problems with hearing or with the audio equipment during Virruta's testimony. Bueno also stated that Mendoza never expressed any complaints about Virruta's testimony. Likewise, Toro-Greiner did not recall Mendoza complaining about any problems or issues with hearing Virruta's testimony.

The district judge's practice after a break in a jury trial was to inquire whether the prosecution or defense had anything to raise before the jury was brought into the courtroom. This practice was followed throughout Mendoza's trial. According to the district judge, after the lunch break following Virruta's testimony, the court asked whether the de-

fense had anything to raise before the jury was brought in, and Lenyo said that there was not. (Our own review of the trial transcript confirms this fact.)

The district court denied Mendoza's § 2255 petition. The court credited Lenyo's testimony, which it found was "modestly corroborate[d]" by Bueno's and Toro-Greiner's testimony, and found that Mendoza's claim that no interpreter was available for communication with Lenyo during Virruta's testimony lacked credible evidentiary support. Specifically, the court found that two interpreters were in the courtroom the second day of trial; one interpreted for Virruta and the other was at the defense table with Mendoza. The court also observed that even if the second interpreter had not been at the defense table, Mendoza would not have been denied due process because "[t]he law and the Constitution require that a defendant be able to understand the testimony and be able to communicate with his attorney, but no case has held that a defendant has the right to be able to do both simultaneously." The court reasoned that even if Mendoza had no interpreter through whom he could communicate with Lenyo during Virruta's testimony, "the interpreters were available for that purpose at all other times during trial, including when court was not in session." It noted that one such time was the lunch break taken after Virruta's testimony, and when court resumed after the break and asked whether the defense had anything to raise before the jury came in, Lenyo responded in the negative.

The district court concluded that there was no showing of ineffective assistance of counsel with respect to the interpreter arrangement because the arrangement—whether the one remembered by Lenyo or the one alleged by Mendoza—

was acceptable under the Sixth Amendment and Court Interpreters Act (CIA), 28 U.S.C. § 1827. The court also determined that there was no ineffective assistance with respect to the failure to translate the written discovery; nothing suggested that summarizing discovery for Mendoza rather than translating each page fell below an objective standard of reasonableness. Finally, the court concluded that even if counsel's performance was deficient, Mendoza had not shown any prejudice as a result, and thus denied his claims. Mendoza petitioned for our review.

## II.  ANALYSIS

Mendoza claims that he was denied due process when the court moved one of the interpreters near the witness stand to interpret for Virruta because that deprived him of the ability to communicate effectively with his counsel during her testimony. He argues that if he had had contemporaneous communication with counsel during Virruta's testimony, the jury would have been exposed to information that the agents who testified for the government had threatened her that if she failed to cooperate, her children would be taken away from her, which would have affected the agents' credibility. Mendoza also argues that counsel provided ineffective assistance by failing to object to the interpreter arrangement, failing to have the discovery translated into Spanish, and failing to adequately review the discovery with him.[1]

---

[1] Mendoza's opening brief also complained about an inability to comprehend Virruta's testimony. At oral argument, however, his counsel assured us that this was not an issue; instead, the claim is that the interpreter was moved from Mendoza's side, leaving him without the ability to communicate with counsel. And we note that Mendoza's reply brief

When considering an appeal from the district court's denial of a § 2255 motion, we review legal conclusions de novo and factual findings for clear error. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013), *petition for cert. filed*, (U.S. Dec. 20, 2013) (No. 13-10126). "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Webster v. United States*, 667 F.3d 826, 830–31 (7th Cir. 2011) (quotation marks and omitted).

### A. The Interpreter Arrangement

A criminal defendant is denied due process when he is unable to understand the proceedings due to a language difficulty. *See United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *United States v. Cirrincione*, 780 F.2d 620, 634 (7th Cir. 1985). And a criminal defendant has a due process right to communicate with counsel. *Johnson*, 248 F.3d at 664. Therefore, a criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter to enable him to understand what is said at trial and to communicate with counsel. *Id.* But a defendant does not have a due process right to have an interpreter continuously seated at the defense table. *Id.* (holding the defendants' con-

focuses on the alleged violation of the right to contemporaneous communication with counsel. In any event, the district judge found that Mendoza could understand the questions put to Virruta, his common law wife, when they were translated into Spanish; he could understand Virruta's testimony, which was given in Spanish; and both interpreters testified that they interpreted loudly enough so Mendoza could hear them; thus Mendoza had no need for translation of Virruta's testimony. *See United States v. Sanchez*, 928 F.2d 1450, 1455–56 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002).

stitutional right to communicate with counsel was not violated where the defendants were able to communicate with counsel through an interpreter during breaks in testimony).

Under the Court Interpreters Act, which was enacted "to ensure that the defendant can comprehend the proceedings and communicate effectively with counsel," *Johnson*, 248 F.3d at 661 (quotation marks and citation omitted), a defendant is entitled to the appointment of an interpreter "if the district court determines that the defendant: (1) speaks only or primarily a language other than the English language; and (2) this fact inhibits their comprehension of the proceedings or communication with counsel," *id.* Like the Constitution, "the CIA does not mandate the appointment of an additional interpreter to sit at the defense table." *Id.* at 663. As we have explained: "The CIA provides for simultaneous interpretation of the proceedings, not simultaneous interpretation of attorney-client communications." *Id.*

The district judge's factual findings defeat Mendoza's due process claim. The judge found that two interpreters were in the courtroom during Virruta's testimony; one interpreted for Virruta and the other was at the defense table with Mendoza and available for communications with counsel. These findings are well-supported by Lenyo's testimony and the interpreters' testimony. The district judge had the opportunity to hear and observe the witnesses' manner and demeanor while testifying and he found Lenyo's testimony "quite believable and persuasive"; by contrast, he found Mendoza "painfully unbelievable, perhaps the least credible witness the presiding judge has seen in thirty years." In fact, the judge noted that, despite Mendoza's claimed unfamiliarity with the English language, during his § 2255 hearing testi-

mony, he answered questions asked of him in English before they were translated into Spanish. Having heard the interpreters' testimony, the judge described Mendoza's claim that he complained to them about problems he was having with hearing but that they ignored his complaints as "poppycock." And the judge characterized other parts of Mendoza's testimony as "hogwash" and "balderdash." As examples supporting these colorful characterizations, we note that when Mendoza was asked whether the questions put to Virruta were translated into Spanish, he said he didn't remember, and when asked if her answers were in Spanish, he said, "Maybe they were" and then he claimed not to have heard them. The judge credited Lenyo's testimony over Mendoza's testimony "on any point on which they disagree," specifically mentioning Lenyo's testimony about what happened during Virruta's testimony. Credibility determinations are "especially within the province of the district court and can virtually never be clear error." *United States v. Longstreet*, 669 F.3d 834, 837 (7th Cir. 2012) (quotation marks and omitted).

We have no reason to dispute the experienced trial judge's credibility determinations. Given his findings that Lenyo was "quite believable" and Mendoza was "painfully unbelievable," there is no basis to think the judge made a mistake in finding that an interpreter was at the defense table during Virruta's testimony. Because an interpreter was available to interpret communications between Mendoza and Lenyo at all times during Virruta's testimony, Mendoza's due process claim fails.

Mendoza suggests that the district court's statement that "[w]e don't have interpreters for witnesses" shows there was

only one interpreter in the courtroom. But the district court found otherwise, and the quoted statement is consistent with the presence of two interpreters who were appointed to interpret for Mendoza. The district judge noted that in lengthy proceedings, including jury trials, interpreters usually work in pairs so one can rest while the other actively translates testimony. (This is a commendable practice.) There was only a slight deviation from this practice during Virruta's testimony: by having one of the interpreters translate for Virruta, that interpreter was unable to rest as she otherwise would during the testimony.

In addition, Mendoza suggests that the only plausible explanation for the bench conference before Virruta testified was the presence of only one interpreter. However, at the bench conference, the prosecutor explained that he had contacted the court, informed its staff that Virruta did not speak English, and asked to be notified if this was a problem; yet he was not notified. It is obvious that there had been some confusion about whether the court would provide an interpreter. The fact that government counsel addressed this confusion with the court outside of the presence of the jury says nothing about the number of interpreters present in the courtroom and does not call the trial judge's finding into question.

But even if Mendoza had shown that the district court's findings were clearly erroneous, his claim would fail as a matter of law. As the court properly determined, neither the Constitution nor the CIA guarantees simultaneous interpretation of attorney-client communications. *See Johnson*, 248 F.3d at 663–64 (neither the Constitution nor CIA gives a criminal defendant a right to the appointment of an inter-

preter to sit at the defense table). Even assuming that no interpreter had been sitting at the defense table to enable Mendoza to communicate with counsel during Virruta's testimony, Bueno and Toro-Greiner were available for that purpose at all other times that second day of trial. Indeed, interpreters were available to interpret for Mendoza throughout the trial, including breaks. The court took a lunch break right after Virruta's testimony; Mendoza could have communicated with counsel before or during that break. *See id.* (concluding that an arrangement which allowed the defendants to communicate with counsel "during breaks in testimony" satisfied the Constitution and CIA).

Mendoza apparently did not mention to Lenyo during that break that he had wanted Lenyo to ask Virruta if the government agents had threatened her; when the parties and counsel reconvened after the break, and the judge asked if there was anything either side wanted to raise before the jury was brought into the courtroom, Lenyo said no. In fact, Mendoza never told Lenyo that Virruta had been threatened. Virruta was not a surprise witness; Mendoza was aware that she was going to testify at trial. If Virruta had been threatened by the agents, we would expect Mendoza to have mentioned that to trial counsel at some point along the way.

And even if there was a due process violation in the interpreter arrangement, we would not vacate Mendoza's conviction if the error was harmless beyond a reasonable doubt. *See, e.g.*, *United States v. Dickerson*, 705 F.3d 683, 691 (7th Cir.) ("In assessing a claim of constitutional error, we are mindful that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a rea-

sonable doubt.") (quotation marks and citation omitted), *cert. denied*, 134 S. Ct. 166 (2013). A constitutional error is harmless if it can be shown, beyond a reasonable doubt, "that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967).

Mendoza argues that if he had had contemporaneous communication with counsel during Virruta's testimony, the jury would have been exposed to information that the agents who testified for the government had threatened Virruta that if she failed to cooperate, her children would be taken away from her, which would have affected the agents' credibility. Because Virruta did not testify at the evidentiary hearing, there is no evidence that she would have said that the agents had threatened her. Besides, she was not an important witness for the prosecution; she claimed to have no knowledge of Mendoza's drug dealing. However, there was ample evidence of Mendoza's guilt from police participation in Mendoza's drug deals, two informants' drug dealings with Mendoza, and evidence obtained during the execution of a search warrant at Mendoza's residence. *See Mendoza*, 401 F. App'x at 129–30. Any error arising from the interpreter arrangement was harmless beyond a reasonable doubt.

### B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Mendoza must show "(1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake*, 723 F.3d at 879; *see Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). With respect to the performance prong, he "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'" *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). And with regard to the prejudice prong, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Regarding counsel's failure to object to the interpreter arrangement during Virruta's testimony, Mendoza runs head-on into the district court's finding that an interpreter was at the defense table and available to Mendoza for communications with counsel. Based on this finding, Mendoza's rights were not infringed and Lenyo was not deficient in failing to object to the arrangement in which one interpreter was moved near the witness stand. But even if we were to find clear error in the district court's finding as to the second interpreter's location at the defense table, and assume that counsel was deficient in failing to object or ask for an alternative arrangement, such as multiple breaks during Virruta's testimony, the claim still fails because Mendoza cannot show that counsel's performance prejudiced the defense.

Mendoza's only claim of prejudice is that because trial counsel failed to object to the interpreter arrangement, the interpreter issue was not preserved for appeal. Mendoza claims that he wanted Virruta questioned about whether the government agents had threatened her, but he offered absolutely no evidence to substantiate his claim that she had been threatened. Therefore he cannot show prejudice. *See United States v. Harris*, 394 F.3d 543, 555 (7th Cir. 2005) (denying ineffectiveness claim based on counsel's failure to ar-

range visit to crime scene because defendant did not "even attempt to demonstrate the value" of such a visit). Since the interpreter arrangement issue fails on the merits, the failure to preserve the issue for appeal cannot amount to prejudice.

As for the claim that counsel was ineffective in failing to have all discovery translated into Spanish and in failing to adequately review discovery with the defendant, Mendoza has not shown that counsel's performance was deficient in any way or that any deficiency prejudiced the defense. Mendoza claims that by not being able to review the evidence against him, he could not participate in meaningful cross-examination of the government witnesses. Yet he acknowledges that Lenyo along with interpreter Bueno reviewed the evidence with him for about six hours. Thus his claim is essentially that six hours was not enough time to review the evidence.

Lenyo's testimony and billing records establish that he spent over 21 hours reviewing discovery in the case. He then spent several hours reviewing the summarized discovery with Mendoza. Lenyo even arranged for Mendoza to view the physical evidence against him at the U.S. Attorney's Office. Mendoza fails to identify any particular evidence that Lenyo failed to review with him. Nor does Mendoza explain how Lenyo was insufficiently prepared for trial. With nothing other than conclusory allegations, Mendoza cannot establish deficient performance or, for that matter, prejudice.

In addition, Mendoza complains that Lenyo did not review with him all the audio recordings the government disclosed as part of its case (Mendoza listened to two of the recordings; the government planned to use three recordings at trial but it appears that it only played two for the jury), and

that transcripts of the recordings were not translated into Spanish for him. As in *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010), where the defendant complained that his attorney did not review with him video recordings before trial, Mendoza's claim fails. Recognizing that "while standing alone this [the failure to review video recordings] may potentially give rise to a possibility of deficient performance," *id.* at 690, we concluded that when considered with the actions the attorney "*did* take, we cannot say that the attorney's performance was incompetent," *id.* We reasoned that the attorney "knowledgeably questioned the witnesses … about the recordings" and demonstrated his familiarity with the recordings during closing argument. *Id.* Thus, the evidence showed the attorney's "preparation and review of the recordings." *Id.* So it is here. Lenyo told the court that he had reviewed all the evidence and formulated a theory of defense informed by his review. Lenyo cross-examined informant Cesar Aguayo about the recordings and during closing argument, Lenyo demonstrated his familiarity with the recordings and the transcripts that were "corrected" by Aguayo. Thus, the evidence showed Lenyo's preparation and review of the recordings.

Mendoza also complains that Lenyo did not have the documents translated into Spanish for him. Due Process does not require that discovery documents be translated into a defendant's native language. *Cf. United States v. Celis*, 608 F.3d 818, 841 (D.C. Cir. 2010) (concluding there was no support for the claim that "the Constitution *compels* that in every case in which defendant is not fluent in English, all discovery documents must be translated, in written form, into the defendant's native tongue"); *United States v. Gonzales*, 339 F.3d 725, 729 (8th Cir. 2003) (court's failure to provide written

translations of documents involved in legal proceedings was not plain error). At the § 2255 hearing, Lenyo stated that because of the sheer volume of discovery, he determined in his professional judgment that it would have been impractical if not impossible to translate each discovery document into Spanish. By describing the task in this way, we understand him to have meant that based on his own review of the discovery and evidence against Mendoza, there was nothing to gain by translating the written discovery. Indeed, Lenyo stated that his decision was informed by the fact that Mendoza had not given him much with which to formulate a defense; Mendoza simply denied having committed the crimes charged. Especially given Mendoza's testimony at the evidentiary hearing that he could read very little Spanish (which makes sense because at one point he testified that he had no formal education whatsoever), Lenyo's decision to summarize the documents instead of having them translated for Mendoza was reasonable.

Finally, Mendoza has wholly failed to show a reasonable probability that, but for counsel's alleged errors regarding discovery, the result of the trial would have been different. *See Strickland*, 466 U.S. at 694; *Blake*, 723 F.3d at 879. There has been no showing of how translating the discovery or counsel's further review of discovery with Mendoza would have changed Mendoza's ability to prepare for or participate in his trial or otherwise would have affected the trial's outcome. This inability to show prejudice is fatal to Mendoza's ineffective-assistance claim.

## III.    CONCLUSION

We accordingly AFFIRM the district court's judgment.