In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3191

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VINCENTE A. JIMENES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 15-cr-40043-001 — **Sara Darrow**, *Judge.*

ARGUED FEBRUARY 8, 2017 — DECIDED MARCH 23, 2017

Before WOOD, *Chief Judge*, FLAUM, *Circuit Judge*, and
CONLEY, *Chief District Judge*.[*]

WOOD, *Chief Judge*. After pleading guilty to three federal
drug and money-laundering offenses, Vincente Jimenes was
sentenced to 151 months' imprisonment and five years' super-

[*] Of the Western District of Wisconsin, sitting by designation.

vised release. In this appeal, he contends that his constitutional rights were violated by the use, for Sentencing Guidelines purposes, of a state misdemeanor conviction that was obtained without the use of a Spanish interpreter. The district court reviewed the record of the conviction and was satisfied that enough informal translation took place to support a conclusion that his guilty plea was knowing. It did not need to go that far, however, because this was not the time nor place for a collateral attack on that conviction. We therefore affirm Jimenes's sentence.

## I

Because Jimenes's appeal is limited to his sentence, we restrict our discussion accordingly. Before his initial sentencing hearing, which took place in July 2016, a probation officer calculated that his total offense level was 33 and his criminal history category was II, for purposes of the Sentencing Guidelines. Jimenes challenges only the criminal history calculation.

The probation officer took into account a 2012 conviction for a class A misdemeanor offense for driving with a suspended license. (Two other charges—a petty offense for a headlamp that was out and a business offense for having no insurance—were dismissed when Jimenes pleaded guilty to the misdemeanor.) Illinois law provided that the suspended-license charge could lead to imprisonment for less than one year or conditional discharge not to exceed two years. 730 ILCS 5/5-4.5-55(a), (d). On November 21, 2012, the state judge sentenced Jimenes to conditional discharge for 24 months, plus a fine of $500.

But Jimenes did not manage to stay out of trouble for the requisite two years. Instead, he became involved in a cocaine

conspiracy, for which he was charged in federal court with conspiracy to distribute at least five kilograms of cocaine (ending June 2, 2015), conspiracy to launder proceeds (ending July 24, 2014), and money laundering to conceal drug proceeds (ending July 22, 2014). Because Jimenes committed the latter two offenses while he was still under the conditional-discharge sentence of the state court, the probation officer applied Guideline 4A1.1(d), which requires the addition of two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." This gave Jimenes a total of three criminal history points—one for the underlying state offense and two under 4A1.1(d)—and thus landed him in Criminal History Category II, with a recommended sentencing range of 151–188 months. The district court gave Jimenes the lowest guidelines sentence: 151 months. Absent the state misdemeanor, his Criminal History Category would have been I, with an accompanying guidelines range of 135–168 months.

## II

This would all be straightforward but for one problem: Jimenes represents that he cannot read or speak English, and there is no indication that there was a qualified Spanish interpreter present at the state-court proceeding. Even for a Class A misdemeanor, Illinois law requires the court to "determine whether the accused is capable of understanding the English language and is capable of expressing himself in the English language so as to be understood directly by counsel, court or jury." 725 ILCS 140/1. Moreover, we have held that "a criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter to enable

him to understand what is said at trial and to communicate with counsel." *Mendoza v. United States*, 755 F.3d 821, 828 (7th Cir. 2014). But on the other hand, *Mendoza* held that this right did not go so far, for instance, as to require that an interpreter be at the defense table for every minute of the trial. *Id.*

If Jimenes were alleging that he was deprived of proper interpretation services in the federal proceeding now before us, we would have a different case. But what he is doing is raising a collateral attack on a state-court conviction that has been used to increase his criminal-history score. We must turn for guidance, therefore, not to the Due Process Clause or to any of our own earlier decisions, but instead to the Supreme Court's decision in *Custis v. United States*, 511 U.S. 485 (1994).

In *Custis*, the Court considered the question "whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence under the [Armed Career Criminal Act, 18 U.S.C. § 924(e)]." 511 U.S. at 487. It answered that question unambiguously: "We hold that a defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." *Id.* This is a narrower rule than the one we had adopted in *United States v. Mitchell*, 18 F.3d 1355 (7th Cir. 1994), just three months earlier. There, we had indicated the possibility of a challenge not only if the defendant's rights under *Gideon v. Wainwright*, 372 U.S. 335 (1963), were violated, but also if a conviction "lack[ed] constitutionally guaranteed procedures plainly detectable from a facial examination of the record." *Mitchell*, 18 F.3d at 1360–61. Jimenes would like us to resurrect the *Mitchell* formulation, but we are not free to do so in light of the Supreme Court's more restrictive view. See

*United States v. Arango-Montoya*, 61 F.3d 1311 (7th Cir. 1995) (recognizing that *Custis* limited *Mitchell*).

The *Custis* Court stressed that the Armed Career Criminal Act itself left no door open for this kind of collateral attack on the predicate convictions that trigger it. Instead, it focused on the simple fact of the conviction. Elsewhere in the Gun Control Act of 1968, the Court found language indicating that what counts as a conviction of a crime is determined in accordance with the law of the convicting jurisdiction. 511 U.S. at 491. Thus, if a person in Jimenes's shoes were to return to the state court and have the conviction expunged, a later federal proceeding could not take it into account.

*Custis* squarely rejected the invitation to extend the ability to mount a collateral attack on a prior conviction used for sentencing enhancement beyond the right to have appointed counsel. In so doing, it rejected the defendant's efforts to argue that he had been denied effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not adequately been advised of his trial rights. *Id.* at 496. We see no distinction between these arguments and Jimenes's assertion that he did not adequately understand the prior state court proceeding because of a language barrier. We also see nothing that would justify a distinction between the Armed Career Criminal Act and the Sentencing Guidelines for this purpose. For both the statute and the Guidelines, the inquiry is over once the fact of the conviction is established. In neither case is there any rule that would require an exhaustive examination of every prior conviction to see if it is vulnerable to some kind of challenge.

Two final points are important here. First, Jimenes does not argue that his fundamental right to counsel was violated,

even though he proceeded *pro se* in the state court. His state conviction did not result in incarceration, and under *Nichols v. United States*, 511 U.S. 738 (1994), prior misdemeanor convictions may be used as sentencing enhancers even if the defendant did not have counsel, as long as the sentence did not include imprisonment. *Id.* at 746–47. This is true even if the enhanced sentence in the later proceeding does result in imprisonment. *Id.*

Second, even if we are reading *Custis* too narrowly, and we were to look for the kind of "plainly detectable" error described in *Mitchell*, we would have trouble finding such error here. The transcript of the state-court proceeding is in the record, and in four different places over just two pages it contains this notation: "Spanish-speaking discussion was held off the record." True, we do not know what was said in those discussions, nor do we know anything about the ability of the speaker to convey accurately the substance of the court's comments in English. The record refers to an "unidentified speaker" who tells the court a few pertinent things, such as "[h]e got proof of insurance." On the other hand, at the end, when the court asks whether "he" (Jimenes) has any questions, the unidentified speaker rather oddly answers, "All right. Thank you."

More than that would certainly be required if that were the record of his conviction in the district court. But it is not. The best we can say is that we have no idea how much, or how little, Jimenes understood in the state court proceeding. He signed a "Waiver of Attorney," and he signed a "Plea of Guilty and Waiver of Jury," both of which are written only in English. This murky record does not reveal the kind of "plainly

detectable" flaw the Supreme Court found in a *Gideon* violation, or that we had in mind in *Mitchell*.

The district court, upon reading the state-court transcript, went directly to the merits of Jimenes's challenge and found that "it is clear from the transcript … that, albeit not an official court reporter, it's on the record that he was allowed time for interpretation off on the side in order to enter a knowing plea." As we have said, we are not so confident that the record permits this inference. But that does not matter, given *Custis*.

Jimenes's final argument is that the government has waived its right to rely on *Custis*, because it has raised this point for the first time on appeal. At worst, however, we would regard this as forfeiture of the argument, and we are not inclined to hold the government to that aspect of its litigation strategy. It prevailed, after all, in the district court, and is now simply defending the court's decision on a different ground. Moreover, *Custis* has important implications for the operation of the Sentencing Guidelines and for the relations between federal and state courts—a fact that also argues against a finding of forfeiture.

Once we establish that this is not the proper time or place for Jimenes to challenge his 2012 state-court conviction, both the single criminal-history point he received directly for that offense, plus the two additional points he received because he committed his present crimes while he was conditionally discharged for the state crime, are beyond dispute. He does not otherwise attack his federal sentence of 151 months. We therefore AFFIRM the judgment of the district court.