NOT DESIGNATED FOR PUBLICATION

No. 120,443

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JIWU WEI,
*Appellee.*

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES T. GEORGE, judge pro tem. Opinion filed October 18, 2019. Affirmed.

*Kate Duncan Butler*, assistant district attorney, *Charles Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jerry K. Levy*, of Law Offices of Jerry K. Levy, P.A., of Lawrence, for appellee.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: After Jiwu Wei was charged with several traffic offenses in Douglas County District Court, he asserted he spoke a rare Chinese dialect and didn't really understand English. The district court attempted and failed to secure an interpreter for Wei's trial. The district attorney's office augmented those efforts with an equal lack of success. Wei's bilingual wife declined to act as an interpreter for the trial, and the district court rejected the prosecutor's suggestion she could be compelled to serve in that capacity. The district court dismissed the charges with prejudice nearly three years after they first had been filed. The State has appealed the dismissal. Under the circumstances, we find the district court did not abuse its discretion and affirm.

1

The sole issue on appeal rests on the authority of the district court to dismiss this case because an interpreter could not be found to serve during the trial. The State advances an array of arguments rooted in public policy and in both statutory and common law for why the district court should be reversed and the case reinstated. We take those up after outlining the factual circumstances, as we glean them from a skimpy record, and the more detailed procedural progression of the prosecution.

FACTUAL AND PROCEDURAL HISTORY

The district court never held an evidentiary hearing on the underlying events leading to the traffic charges against Wei. So we have looked at the probable cause affidavit, recognizing that although the law enforcement officer made the statement under oath, she has not been cross-examined and no one has had the opportunity to assess her demeanor during such questioning. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) ('"The judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement."' [quoting *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 (2012) (Atcheson, J., dissenting)]). But those untested averments provide a useful factual context.

According to the affidavit, Wei was driving a dark colored sedan shortly before noon on November 7, 2015, in rural Douglas County when the front of his car struck the rear of another car as both were passing through an intersection. Wei stopped, spoke briefly to the other driver, and then drove away. The other driver then called 911. She later told an investigating officer she could not understand Wei because he had a thick accent. An officer responding to the 911 call saw a dark sedan with damage to the hood and grill. The officer attempted to stop the car, but the driver sped off. After what the affidavit described as "a short pursuit," the driver pulled over. Two officers then identified Wei as the driver and arrested him. They took Wei to the law enforcement center where the officer who wrote the affidavit and a fourth officer questioned him.

2

According to the affidavit, Wei admitted to being inattentive and failing to see a stop sign at the intersection. Wei told the officers that he left the scene because he believed the other vehicle had not been damaged and that he didn't initially pull over for the pursuing law enforcement officer because he didn't want to pay a fine.

About a week later, the State charged Wei with failing to stop at a stop sign, a traffic infraction; failing to provide required information at the scene of a motor vehicle collision resulting in property damage, an unclassified misdemeanor; leaving the scene of a property damage collision without providing required information, an unclassified misdemeanor; and attempting to flee or elude a law enforcement officer, a Class B misdemeanor. The fleeing and eluding charge is the most serious of the four and carries a sentence of up to six months in jail and a fine of up to $1,000.

As we explain in recounting the procedural history, the initial case was dismissed without prejudice in January 2018. The State refiled the charges four months later in a new case. The appellate record consists of hearing transcripts and court filings in the second case and summary docket sheets for both cases. So what we know about the initial case has been pieced together from references to it in the record of the second case, the docket sheets, and common ground in the appellate briefs.

From reviewing those sources, we understand Wei appeared at the court hearings throughout both cases with legal representation. One lawyer represented him for almost a year in the first case and withdrew in favor of Wei's current lawyer. Early in the first case, Wei's lawyer informed the district court that Wei spoke an unusual Chinese dialect and would require an interpreter. We gather that at some (and, perhaps, most or all) of the hearings, Dr. Ferilyn Shi, Wei's wife, acted at least informally as an interpreter. As we indicated, she is bilingual. The district court record indicates Shi is a neurologist who has worked at various universities and medical centers in the United States. She also apparently translated at private meetings between Wei and his lawyer.

3

The docket sheet indicates a trial setting shortly after Wei changed lawyers at which an interpreter was present. The district court continued the case because the interpreter spoke a different Chinese dialect than Wei does. There were several more continuances granted in the first case ostensibly to find a suitable interpreter. The district court dismissed the case without prejudice in early January 2018. We have very little information on what specifically the district court did to secure an interpreter during the first case or what the district attorney's office may have done to supplement those efforts.

After the charges were refiled, the district court held several hearings and scheduled a trial for mid-July. At that trial setting, the district court made a short record indicating his administrative assistant had tried to find an appropriate interpreter and could not. The district court said the staff had "searched diligently" but did not detail what had been done. The prosecutor pointed out that the district attorney's office had unsuccessfully tapped various resources, including professors at the University of Kansas, to find an interpreter. The prosecutor floated the idea that Dr. Shi could translate at trial. Both Wei's lawyer and the district court suggested she could not be compelled to do so. The district court continued the case for about six weeks.

In the meantime, Wei filed a motion to dismiss based on the failure to find an interpreter and on the overall delay in moving forward to trial. The district court heard arguments on the motion in early September. During the hearing the district court asked Dr. Shi if she were willing to act as an interpreter at a trial. She unequivocally stated she was not.

At the hearing, the prosecutor said Wei had provided two differing descriptions of the dialect he speaks, hampering efforts to find an interpreter. The prosecutor labeled that a deliberate "delay tactic." The district court had Dr. Shi again provide information on the dialect, keyed to the specific geographical area where Wei was raised in southwest China near Vietnam.

4

The district court then summarized the efforts of its staff to find an interpreter, including speaking with faculty at the University of Kansas and contacting various professional language translation services and the Chinese embassy. The district court indicated that those services didn't request additional information about the dialect and simply indicated it was rare. The district court acknowledged it had the duty to secure an interpreter and stated, "We've pretty much exhausted what we're going to do." The district court indicated the district attorney's office could continue looking for an interpreter. To that end, the district court continued the case to November 9 for trial with the understanding that if an interpreter were not available the case would be dismissed.

The transcript of the proceedings on November 9 indicates that a representative of a private translation service was on a speakerphone with the district court, the lawyers, and Wei. The discussion suggests the district attorney's office had found the particular service. As the hearing unfolded, the company representative stated that the interpreter who had been identified as likely skilled in Wei's dialect was unavailable at that time. The prosecutor then told the district court that the company representative was unable to say when the interpreter would be available. The call was terminated. The district court dismissed the case with prejudice, consistent with the discussion at the previous hearing.

The State has appealed the dismissal of the case, as permitted in K.S.A. 2018 Supp. 22-3602(b)(1).

LEGAL ANALYSIS

1. *Applicable Legal Principles*

A district court has the authority to dismiss a criminal case with prejudice, thereby precluding the State from refiling the charges against the defendant. An appellate court will review the dismissal under an abuse of discretion standard. *State v. Bolen*, 270 Kan. 337, Syl. ¶¶ 1-2, 13 P.3d 1270 (2000). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores

5

controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). A district court's discretion to dismiss a criminal case with prejudice is not unfettered, since the governing legal considerations effectively restrict that authority to "extreme circumstances." *Bolen*, 270 Kan. at 343. And its exercise—as a drastic remedy—should be confined to those situations where "the interests of justice require such action." 270 Kan. at 343.

A defendant's right to have an interpreter at critical stages of a criminal prosecution is grounded in both constitutional law and, in Kansas, in statutory authority. K.S.A. 75-4351 (statutory duty of court to appoint interpreter); *State v. Calderon*, 270 Kan. 241, 246-47, 13 P.3d 871 (2000); *Ramirez v. Young*, 906 F.3d 530, 536 (7th Cir. 2018) (due process right); *United States v. Henry*, 888 F.3d 589, 602 (2d Cir. 2018) (Sixth Amendment right). Criminal defendants have constitutional rights found in the Sixth Amendment to the United States Constitution to be present at trial, to confront the witnesses against them, and to the assistance of a lawyer. Those rights entail more than a physical presence; defendants must be able to consult meaningfully with their lawyers and otherwise participate in their cases. That's why a criminal defendant who because of mental illness cannot understand what's going on is considered incompetent to stand trial. See *Medina v. California*, 505 U.S. 437, 444, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (mental competency for due process purposes entails "the capacity to understand the nature and object of the proceedings," to consult with a lawyer, and to assist in presenting a defense). A criminal defendant is no less shackled by an impenetrable language barrier and is no more able to assist in his or her defense if he or she cannot speak the language of the court and counsel. See *Calderon*, 270 Kan. at 253. A criminal defendant who is not conversant in English and has to proceed without an interpreter also loses the due process protections of the Fourteenth Amendment to the United States Constitution. See *Mendoza v. United States*, 755 F.3d 821, 827-28 (7th Cir. 2014).

Under K.S.A. 75-4351(b), district courts "shall . . . appoint[]" interpreters for defendants in criminal prosecutions that could "result in [their] confinement . . . or the imposition of a penal sanction" if their "primary language is one other than English." On its face, the statutory requirement is broader than the constitutional right. See *Mendoza*, 755 F.3d at 828 ("[A] criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter."); *United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990) (no constitutional error in conducting plea hearing without interpreter where defendant had "[a]n adequate understanding of the English language" and made no request for interpreter). Both in the district court and on appeal the parties have focused on the statutory requirement, so we follow that lead. But we also weigh the complementary constitutional interests in a fair adjudicatory process for criminal defendants.

### 2. Case Specific Issues

We lay out the guiding legal principles that lead us to affirm the district court's decision to dismiss the charges against Wei with prejudice. In doing so, we flag and reject some of the State's arguments for reversing that ruling. We then consider and reject the remaining arguments. As a net result of that exercise, we find no abuse of judicial discretion under the circumstances of this case.

### 2a. District Court's Duty to Secure Interpreter

First, under K.S.A. 75-4351, the district court has the duty to appoint an interpreter and, thus, implicitly bears the obligation to find an appropriate interpreter. K.S.A. 75-4352 (judge shall appoint interpreter); cf. K.S.A. 75-4355 (statutes regulating appointment of interpreters do not limit "the inherent power of a court to appoint an interpreter"); *State v. Pham*, 234 Kan. 649, 662, 675 P.2d 848 (1984) (district court did not err in appointing more than one interpreter for trial with multiple defendants). As we

have said, the district court acknowledged that obligation. The duty demands a reasonable effort under the circumstances. Again, the district court acknowledged as much when it weighed the comparatively minor charges against the defendant with the time that had been expended in trying to find a suitable interpreter.

The State argues that the district court impermissibly outsourced its duty to the district attorney's office in what amounted to an abuse of discretion. We disagree with the factual premise of the argument. The district court outlined on the record the efforts its staff undertook to find an interpreter fluent in Wei's dialect. Those efforts included contacting private companies providing translation services, potentially knowledgeable faculty at the University of Kansas, and in an admitted longshot the Chinese Embassy. Although the district court did not provide an elaborate description of those undertakings, the prosecutor sought no more detail.

We recognize the district attorney's office augmented the district court's search for an interpreter. And the district court rather pointedly left it to the prosecutor to find an interpreter after the September 2018 hearing. But this is not a case in which the district court did nothing, abdicating its statutory responsibility.

Given the record, we cannot say the district court failed to make reasonable efforts to secure an interpreter for the trial. The State has not shown otherwise. See *State v. Warren*, 302 Kan. 601, 616, 356 P.3d 396 (2015) (appellant has obligation to furnish record affirmatively showing error). Perhaps the district court could have done more or might been more creative in its search. But a district court is not required to engage in an unlimited expenditure of time and effort to line up an interpreter. By the same token, the time and effort reasonably required in a case involving serious felonies would be commensurately greater than the traffic offenses brought against Wei. The district court noted as much.

We have no need to fashion a set of criteria or a bright-line test for reasonableness applicable across cases. Nor do we necessarily think that would be the best approach for addressing this issue on a recurrent basis. The record here demonstrates sufficient effort by the district court that we find no abuse of discretion for that reason in its decision to dismiss the case with prejudice. The additional expenditure of time and resources by the district attorney's office is laudable. But that work does not diminish the sufficiency of the district court's effort in the first instance. And it tends to highlight the particular difficulty in securing an interpreter in this case. Accordingly, the district court's decision to dismiss comports with the considerations laid out in *Bolen*, particularly given the nature of the charges and the length of the delay.

### 2b. Whether Wei Required an Interpreter

When a defendant requests an interpreter, the district court may inquire to determine that the person's primary language is other than English—the standard for appointing an interpreter under K.S.A. 75-4351. If the district court makes that finding, the statute mandates appointment of an interpreter. An explicit finding from the district court to that effect here is not readily apparent from the appellate record. But everyone proceeded on the undisputed assumption that Wei's primary language was not English. The prosecutor did not challenge the factual foundation for Wei's request in the district court.

For the first time on appeal, the State suggests the district court abused its discretion by requiring that Wei have an interpreter for the trial. The State argues: (1) The record offers some indication Wei understands English; (2) the case was not complex; and (3) "the public's interest" favors "the administration of justice." So the State submits the confluence of those considerations would have allowed the district court to dispense with an interpreter.

9

The argument is flawed in several respects. Even assuming we should consider the point, the test the State proposes conflicts with the statutory directive in K.S.A. 75-4351 and substitutes a sliding scale based on how well a defendant understands English and the seriousness of the charges with an amorphous overlay of public interest. The statute doesn't bend that way—the district court's statutory duty is triggered if English is the defendant's secondary, i.e., nonprimary, language and the charges could result in any jail time, i.e., confinement, or any fine, i.e., a penal sanction, however minimal. Moreover, the test doesn't accommodate the basic constitutional requirement that defendants be sufficiently conversant in English—either through their own linguistic abilities or with the help of an interpreter—to participate meaningfully in the adjudicatory process. What the State has proposed isn't the law.

In addition, the prosecutor didn't challenge the district court's assessment that Wei qualified for an interpreter under K.S.A. 75-4351(b) or as a matter of constitutional right and never developed a record that would call that assessment into question or support the test fashioned in the appellate brief. The State points to the probable cause affidavit showing that Wei attempted to communicate with the other driver and gave a statement to investigating officers at the law enforcement center. But what's described in the affidavit establishes nothing with evidentiary heft, especially at this juncture. Even so, the affidavit actually indicates Wei could not readily make himself understood in English at the scene of the collision despite trying to do so. That would be a factor in the constitutional calculation favoring appointment of an interpreter for a criminal defendant. The affidavit is silent as to how the officers communicated with Wei when they questioned him. The silence is inscrutable and simply invites speculation. The prosecutor could have had either or both of the officers testify in the district court if she wished to dispute Wei's request for an interpreter.

We mention that the statute's reliance on a defendant's "primary language" injects a couple of issues we need not address in this case. First, the statutory scheme does not define primary language. It could mean the language a person speaks most of the time or

10

the language he or she would prefer to speak. It might be a person's native or birth language, although we expect that's less likely the intended statutory rule—someone emigrating at a young age might no longer speak that language primarily or at all as an adult. The record sufficiently shows that Wei's primary language was not English, entitling him to an interpreter under K.S.A. 75-4351(b). We suppose a criminal defendant could make a knowing and intelligent waiver of any statutory or constitutional entitlement to an interpreter for court proceedings. Many people are fluent in English, although it may not be their primary language. For example, that's undoubtedly true of a number of court approved interpreters. A speaker of fluent English as a second language might not want an interpreter and probably could not be forced to use one. We have neither situation here, since Wei clearly requested an interpreter and his primary language, however that may be defined, was not English.

### 2c. District Court's Decision Not to Force Dr. Shi to Translate at Trial

The State contends the district court had the authority to compel Dr. Shi to serve as an interpreter during Wei's trial despite her express declination. The State identifies two alternative sources for that purported judicial power—K.S.A. 75-4353(a), which circumscribes when a spouse or blood relative of a party may serve as an interpreter, and the district court's inherent authority. We find neither assertion tenable and turn first to K.S.A. 75-4353(a).

The statute provides:

> "No one shall be appointed to serve as an interpreter for a person pursuant to the provisions of K.S.A. 75-4351. . . if such interpreter is married to that person, related to that person within the first or second degrees of consanguinity, living with that person or is otherwise interested in the outcome of the proceeding, unless the appointing authority determines that no other qualified interpreter is available to serve."

11

The statute states a negative rule prohibiting district courts from appointing defined categories of individuals as interpreters. The first three categories disqualify individuals with familial type associations with the person who requires an interpreter: Spouses; close blood relatives; and residents of a common dwelling. The fourth category disqualifies anyone "otherwise interested in the outcome" of the matter. The rather obvious legislative intent is to prohibit persons from serving as interpreters in specific cases when they have an apparent bias or prejudice because of what's at stake or based on a relationship to a party or witness requiring translation of the proceedings. The prohibition has been drafted using "shall" that we take to be mandatory, consistent with the common usage of the word in statutes. See *Gannon v. State*, 298 Kan. 1107, 1141, 319 P.3d 1196 (2014). In this case, Dr. Shi fits within the disqualification for spouses.

But the statute contains a limited exception to the mandatory prohibition. In the absence of any other interpreter, the categorical disqualification recedes. And the district court then has the authority to appoint an otherwise prohibited person as an interpreter. In other words, the district court may choose to do so. Contrary to the State's argument, however, the exception does not create a statutory about-face *requiring* the district court to use an otherwise disqualified person as an interpreter. A district court still may have substantial reasons for not doing so in a particular case—most commonly, perhaps, a well-grounded concern that the putative interpreter will not carry out those duties in anything approaching an evenhanded manner. A renegade interpreter with extended responsibilities in a particular proceeding would undermine both the perceived and actual fairness of the truth-seeking process. The better course almost certainly would point toward additional efforts to secure another interpreter.

In addition, the exception in K.S.A. 75-4353(a) presupposes a willing candidate to interpret. Nothing in that subsection or the overall statutory scheme for interpreters suggests the district court can conscript an otherwise unwilling interpreter to serve involuntarily. The State cites no authority for that spin on the language. To the contrary, that construction would read into the statute something not readily or even inferentially

12

found in the actual wording. It would be a dramatic expansion of the statute rather than an arguably minor recasting of the language fully in keeping with what the Legislature had already provided. As such, the State's suggestion shreds accepted canons of construction. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (first principle of statutory construction requires discerning legislative intent from plain meaning of words used if at all possible); *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court "will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it."); *Unruh v. Purina Mills*, 289 Kan. 1185, 1201, 221 P.3d 1130 (2009) (rejecting an argument that "asks the court to read into the statute language that is not present").

In passing, we mention that before appointing a person to translate, a district court has to determine that the individual meets certain criteria measuring competency set out in K.S.A. 75-4353(c). On appeal, the State argues Dr. Shi almost certainly would satisfy those standards. Perhaps. But the district court never considered or ruled on Dr. Shi's linguistic skills measured against the statutory requirements. We view that question as an open one that we need not and really cannot decide on this record.

Apart from possible concerns about Dr. Shi's objectivity, a district court order compelling her to serve as an interpreter to facilitate the trial of Wei would intrude into their marital relationship in a fractious way the law tends to avoid. Generally speaking, the law looks to preserve marital harmony. That's one of the primary policy arguments for the testimonial privilege afforded spouses. See K.S.A. 60-428 (scope); 98 C.J.S., Witnesses § 302 (purpose).

As the State pointed out in the district court, the marital privilege would not prevent Dr. Shi from serving as an interpreter, since those duties have nothing to do with the disclosure of any confidential communications with Wei. And one spouse can be compelled to testify about the conduct or nonprivileged statements of the other spouse.

13

See *State v. Newman*, 235 Kan. 29, 37-38, 680 P.2d 257 (1984). But pressing Dr. Shi into service as an appointed agent of the court in the prosecution of her husband over her objection would be materially different from her reluctantly testifying as a fact witness under subpoena. In this case, fostering marital harmony weighs against the State's position.

As a backstop, the State asserts a district court has the inherent authority to appoint an interpreter. We presume so, consistent with K.S.A. 75-4355. But, as with the statutory argument, that foundation doesn't support what the State tries to build upon it here. District courts have broad authority in managing trials and other proceedings, and their exercise of that authority typically entails judicial discretion. *Harsch v. Miller*, 288 Kan. 280, 288, 200 P.3d 467 (2009) (general authority); *State v. Hamilton*, 240 Kan. 539, 547, 731 P.2d 863 (1987) (trial proceedings). Inherent authority is not, however, a boundless source of judicial power. We doubt that authority extends to demanding otherwise qualified interpreters to appear at trials and forcing them to work against their wishes even if they are fairly compensated.

We haven't endeavored to track down caselaw for our particularized conclusion about dragooned interpreters, since the State has not cited any for its contrary (and we think unlikely) proposition. Nor has the State supported the proposition with a reasoned argument extending beyond the mere invocation of inherent authority and cases recognizing that general authority. Those shortcomings undermine the State's pitch. See *State v. Pewenofkit*, 307 Kan. 730, Syl. ¶ 2, 415 P.3d 398 (2018) (appellate court need not consider point unsupported by authority or a reasoned argument for its validity despite absence of supporting authority). Although we do not treat the State's point as waived or abandoned, we are wholly unpersuaded.

Moreover, even if district courts were to possess such authority, they would not be obligated to exercise it in any given case. So the district court's call against using Dr. Shi as an interpreter remains a discretionary one. There has been no abuse of discretion,

14

given the traffic offenses at issue here and potential problems with Dr. Shi involuntarily serving as the interpreter at trial.

### 2d. State's Public Policy Argument for Reversal

On appeal, the State reprises its argument to the district court that dismissing this case with prejudice will encourage criminal defendants to evade prosecution by claiming to speak obscure foreign dialects as their primary language in the expectation no interpreter will be found. In its brief, the State quotes the prosecutor's dire prediction voiced during the district court hearing on Wei's motion to dismiss: "'[I]t would set a terrible precedent if defendants were allowed to come in and say they speak a very rare dialect. . . . [A]llowing a defendant to come in and use language as a defense gives them prosecutorial immunity.'" This plays more like an oratorical Roman candle than studied argument.

The purported danger apparently lies principally in the requirement of K.S.A. 75-4351 that a district court must appoint an interpreter for a defendant whose primary language is other than English for trial and various other proceedings. But the State's argument likely imputes to defendants a remedy they don't have in K.S.A. 75-4351 and, thus, overstates both the universe of defendants who could successfully make a "rare dialect" claim and the risk of thwarted prosecutions.

As we have said, the statute imposes a duty on the district court to secure an interpreter for trial even if the defendant is conversant in English. K.S.A. 75-4351(b). The statute similarly requires an interpreter to be present for postarrest police interrogations of suspects whose primary language is not English. K.S.A. 75-4351(e). The Kansas Supreme Court has held that although the failure to have an interpreter at the interrogation of an arrestee violates K.S.A. 75-4351(e), it does not create an enforceable remedy in that person to suppress as evidence any statement he or she may have given. *State v. Zuniga*, 237 Kan. 788, 791-92, 703 P.2d 805 (1985). The court held the

15

constitutional test for voluntariness that takes into account the suspect's fluency in English as one factor governs suppression. 237 Kan. at 792. In reaching that conclusion, the court held that K.S.A. 75-4351 and the related statutes on interpreters "do not contain any sanctions for violations." 237 Kan. at 791. This court more recently applied *Zuniga* in affirming the denial of a motion to suppress premised on the absence of an interpreter at a police interrogation in violation of K.S.A. 75-4351(e). *State v. Garcia-Barron*, 50 Kan. App. 2d 500, 506-07, 329 P.3d 1247 (2014).

Based on *Zuniga*, a defendant probably could not successfully reverse a guilty verdict on the grounds he or she had not been appointed an interpreter at trial under K.S.A. 75-4351(b) simply because his or her primary language was not English. Rather, the defendant would have to satisfy the considerably more demanding standard for a constitutional deprivation by showing an inability to communicate meaningfully in English. So a criminal defendant conversant in English could not successfully evade prosecution by claiming some obscure dialect as a primary language.

As we have indicated, the State would be entitled to a district court hearing to challenge a defendant's assertion that he or she wasn't conversant in English and spoke only some unusual dialect. The former might be easier to prove than the latter through testimony from acquaintances, coworkers, and others regularly communicating easily with the defendant in English. We, of course, have not endeavored to suggest just how conversant in English a person must be to satisfy the Sixth Amendment and due process protections afforded criminal defendants.

None of that changes the outcome here, since the record supports the district court's conclusion that Wei could adequately communicate only in the Chinese dialect he identified. So he required an interpreter for trial. But the broader picture, taking into account *Zuniga*, considerably weakens the State's floodgate argument. Moreover, the Kansas Legislature passed the statutes governing appointment of interpreters about 45 years ago. Not only have we yet to the see the predicted flood, there apparently hasn't

16

been so much as a trickle of criminal defendants making specious claims for interpreters. And courts don't necessarily warm up to speculative floodgate arguments anyway. See, e.g., *Lafler v. Cooper*, 566 U.S. 156, 172, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 18-19, 935 P.2d 1054 (1997).

As an ancillary point, the State suggests that Wei had been something less than forthcoming in identifying the Chinese dialect he speaks as a ploy to confound the search for an interpreter. The State says Wei (or perhaps Dr. Shi on his behalf) identified the language in at least two different ways. But the district court made no finding that Wei had engaged in a subterfuge and, to the contrary, indicated its staff had reported no problems because of how the dialect had been described.

Defendants requesting interpreters have an obligation to fairly identify the language in which they are fluent and to cooperate in providing related information to facilitate the district court's efforts to secure an appropriate interpreter. In unusual circumstances, that might even include providing a voice exemplar or a writing sample to aid in clearing up confusion about a rare dialect. The voice and writing samples are not considered privileged when a prosecutor seeks them from a defendant in an ongoing case, so they wouldn't be as aids to a district court in satisfying the defendant's request for an interpreter. See *United States v. Craig*, 808 F.3d 1249, 1260-61 (10th Cir. 2015) (voice exemplar); *United States v. Greer*, 631 F.3d 608, 612-13 (2d Cir. 2011) (handwriting sample).

*3. Conclusion*

The district court's decision to dismiss the traffic charges against Wei rests on the circumscribed judicial discretion outlined in *Bolen*, recognizing the particular costs to the public in terminating criminal prosecutions without affording the State the chance to present its evidence to a fact-finder. The district court recognized the legal framework for

17

its decision and understood the factual circumstances—principally the continuing inability to find a suitable interpreter for Wei despite both its reasonable efforts and the prosecutor's supplemental efforts. We are not prepared to say the dismissal was so wide of the mark that no other district court would have ruled the same way. Even if the ruling were open to fair debate (and it might be), that is not the measure for reversing an exercise of judicial discretion.

The State's contrary arguments cannot override the stringent standard we apply in reviewing matters of judicial discretion. As we have explained, some of the arguments are factually unsupported in the record, others depend on erroneous legal interpretations, and the policy considerations are simply unpersuasive.

Finally, our decision is intimately tied to the circumstances of this particular and most unusual case.

Affirmed.